**Kathryn VAN DER LINDEN, Appellant**

v.

**Dr. Nadeem KHAN, Appellee**

**NO. 02-16-00374-CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: November 9, 2017

ATTORNEYS FOR APPELLANT: THOMAS J. WILLIAMS & JASON P. BLOOM, HAYNES AND BOONE, LLP, FORT WORTH, TEXAS.

ATTORNEYS FOR APPELLEE: FRANK HILL, GREGORY A. EYSTER & HUNTER COX, HILL GILSTRAP, P.C., ARLINGTON, TEXAS.

PANEL: SUDDERTH, C.J.; GABRIEL and KERR, JJ.

## OPINION

BONNIE SUDDERTH, CHIEF JUSTICE

## I. INTRODUCTION

In four issues, Appellant Kathryn Van Der Linden brings this interlocutory appeal of the trial court's denial of her chapter 27 motion to dismiss Appellee Dr. Nadeem Khan's lawsuit against her. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001–.011 (West 2015), § 51.014(a)(12) (West Supp. 2017). We affirm in part and reverse in part the trial court's order and remand this case to the trial court for further proceedings.

## II. BACKGROUND

### A. The Parties

Khan is a board-certified family practice physician who, after graduating from medical school in 1996, moved from Pakistan to the United States to complete his residency at John Peter Smith Hospital in Fort Worth. At the time the lawsuit was filed, Khan was the Chief Executive Officer of Tri Cities Urgent Care, located in Willow Park, Texas.

Van Der Linden is a retired colonel in the United States Air Force. Her twenty-four years of service in the USAF included a deployment to Iraq, where she served for five months in the trauma hospital at Balad Air Base.

Van Der Linden and Khan were neighbors in Parker County, Texas, and Van Der Linden said that she and her husband considered Khan and his wife friends. Their children attended the same school, and at one point, Van Der Linden was one of Khan's medical patients.

### B. The Initial Controversy

According to Van Der Linden, one evening in July 2015 when she and her husband were having dinner in the Khans' home, she and Khan engaged in a private conversation in the kitchen about the United States military presence in the Middle East. According to Van Der Linden, during that discussion, Khan told her that he had given money to the Taliban. Van Der Linden described herself as shocked when Khan said this, and she immediately questioned Khan as to why he would do such a thing. Khan's explanation, according to Van Der Linden, was that his grandfather, who had worked with the CIA, had related to him how he had witnessed the United States " 'flip[ping] sides' with different administrations."

Khan denies that this conversation ever took place. In his affidavit, he further posited that "[i]t defies logic that [he] would make such a radical statement to a former Colonel of the United States Air Force."

According to Van Der Linden, approximately one week later, she questioned Khan again about why he would donate money to a terrorist organization.[1] During that conversation, Van Der Linden said that she told him about a "horrific mass-rape event—perpetrated by the Taliban upon every female in a village, from infant to elderly," the aftermath of which a friend of hers, who had also been deployed to Iraq, had witnessed and later told her about. In a reaction Van Der Linden described as "odd," Khan allegedly responded to this story "by saying the event was bad, and that he really preferred animals over people." According to Van Der Linden, he said, "[I]f he passed an injured

---

1. Van der Linden's affidavit is silent as to how Khan allegedly responded to this ques-

tion.

person on the side of the road versus a wounded animal, he'd rather stop for the animal."

Khan also denies that this conversation ever took place, and in his affidavit, he pointed out that he had "devoted [his] career and life to treating individuals as a medical doctor."

Van Der Linden claimed that Khan's wife Shannon was present for this second conversation, but neither side offered Shannon's testimony into the record.

According to Van Der Linden, these two conversations concerned her, especially given her military career in which she had "seen firsthand the horror that terrorist organizations, such as the Taliban, have produced." Van Der Linden felt obligated to inform others of what Khan had told her because, in her opinion, Khan's statement that he had given money to the Taliban was a matter of public concern. No one disputes, however, that Van Der Linden waited more than five months to act on this sense of duty.

### C. Van Der Linden's Message

In January 2016, Van Der Linden sent the following message to the Facebook accounts of Khan's business associates—Beverly Murphy, Tim Murphy, and Loretta Sheldon Murphy [2]—via Facebook Messenger,[3]

> You are partnering with a Muslim who has told me, PERSONALLY (not

via hearsay) that he has given money to the Taliban. The fact that Shannon Khan is my neighbor has nothing to do with anything. I was deployed to Iraq for 5 months at a trauma hospital at Balad AB, and retired as a Colonel in the USAF. ANYONE who gives money to the Taliban is my enemy. No lawyer you can hire will undo terrorist involvement. Good luck. Kathy Van Der Linden, Col (USAF retired).

She received no response to the Message.

The record is vague as to how Van Der Linden obtained the names of Khan's business associates. Van Der Linden claims that she "became aware" that Khan had a potential business venture pending with "relatives of a woman named Melissa Murphy Miller." According to Van Der Linden, by looking at the "Friends" on Miller's Facebook page, she was able to identify the individuals—Beverly Murphy, Tim Murphy, and "Loretta Sheldon" Murphy—who she "thought might be Miller's relatives."

Khan provided a different explanation. In his affidavit, Khan claimed that he had "come to learn" that Van Der Linden and his by-then-estranged wife Shannon [4] had "placed spyware on [his] personal computer at [his] residence and accessed [his] personal email accounts." According to Khan, Van Der Linden had learned the identities of his business associates by

---

**2.** In her brief, Van Der Linden notes that one of the Facebook accounts to which she sent the Message was in the name of "Loretta Sheldon Murphy." She deduced from Khan's response, however, that Loretta Murphy and Sheldon Murphy were two different people and thus acknowledged that she may have sent the Message to four individuals, not three.

**3.** As counsel for Van Der Linden explained at the hearing on her motion to dismiss, the

Message was not publicly posted on Facebook or on any other social media site. It was transmitted to the recipients through Facebook's Messenger feature, which is a private message service akin to email.

**4.** At the hearing on the motion to dismiss, the trial court took judicial notice of the Khans' divorce action "pending on the docket of [the] court."

"gaining access to" his computer and email accounts.

In her supplemental affidavit, Van Der Linden neither elaborated on how she initially "became aware" that Khan had a potential business venture pending with "relatives of a woman named Melissa Murphy Miller" nor denied that she had accessed Khan's personal computer, either individually or in concert with Shannon. But as to the allegation that she placed spyware on Khan's computer, she swore that she had "never placed spyware" on Khan's computer and that she had no knowledge of "any other person, including Shannon Khan" having placed spyware on his computer.

As to her motives, Van Der Linden explained that she sent the Message because of her "concern for community well-being and safety," and to "inform [Khan's associates] about his claimed involvement with a terrorist organization and enemy of the United States." She also stated that she believed that "if the business deal went through, part of these people's money could contribute to killing members of our military in Pakistan and Afghanistan, and possibly attacking other United States' interests domestically and abroad."

## D. The Aftermath

According to Khan, at the time the Message was sent, he had an oral agreement with Sheldon Murphy wherein Khan

> would find a seller/producer to sell crude oil and/or other hydrocarbon products. The crude oil and/or other hydrocarbon products would be provided by a third-party. Sheldon Murphy and [Khan] would split the greater of ten-cents ($.10) or ten-percent (10%) of the margin per each barrel of crude oil or other hydrocarbon products.

In furtherance of that agreement, Khan claims that he "had found a seller/producer to purchase 60,000 metric tons of crude oil" and that he would have received approximately $30,000 as a commission from this transaction had the agreement gone forward.

In addition, Khan said he was in the process of negotiating another agreement with Sheldon and Loretta Murphy to purchase a 50% interest in WHAM, LLC. According to Khan, WHAM—an acronym for Wellhead Automation and Measurement—was a North Dakota company that "specialize[d] in gas flow measurement in the oil and natural gas industry." Khan said he had incurred $250,000 in attorney's fees in his attempt to consummate this agreement, and he attached to his response purported drafts of documents related to the agreement. Had this deal been completed, Khan expected it would have been "lucrative," and he estimated that his profits would have exceeded $500,000. According to Khan, in anticipation of this deal, he had already obtained "[$]23.3 million in grants that would go to the company."

But the deal did not go through. According to Khan, while he and Sheldon and Loretta Murphy were in the process of "working out the finer details of the written agreement," Van Der Linden sent the Message to them. Khan said that right after Sheldon received Van Der Linden's Message, Sheldon called him and, "in an excited manner," asked Khan, "What the f—— is going on!" According to Khan, Sheldon told him that he had just received Van Der Linden's Message "and then stated that he could not proceed with the plan." After Van Der Linden sent the Message, neither the oral agreement nor the pending WHAM deal went forward.

## E. The Lawsuit

Khan sued Van Der Linden for tortious interference with contract and with "pro-

spective advantage/business relations" and for "defamation/defamation per se" and sought damages and injunctive relief. Van Der Linden sought dismissal of all of his claims under chapter 27. After the trial court denied Van Der Linden's motion to dismiss, Van Der Linden brought this interlocutory appeal in which she contends that Khan failed to meet his burden to establish a prima facie case on each element of his claims by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011, 51.014(a)(12).

### III. THE ANTI-SLAPP STATUTE

■ Civil practice and remedies code chapter 27, the Texas Citizens Participation Act (TCPA), protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern, i.e., "Strategic Lawsuit[s] Against Public Participation," commonly known as SLAPP suits, by providing a mechanism for summary disposition of such suits. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011); *Schofield v. Gerda*, No. 02-15-00326-CV, 2017 WL 2180708, at *10 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. The statute's purpose is to identify and summarily dispose of lawsuits designed to chill First Amendment rights, but not to dismiss meritorious lawsuits. *Lipsky*, 460 S.W.3d at 589 (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.002).

■ Summary disposition is achieved through the TCPA's provision for expedited dismissal of lawsuits. The statute permits a defendant, within 60 days of service of the lawsuit, to seek dismissal of the lawsuit by challenging the plaintiff to show prima facie evidence to support his claim. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, .005. The movant is entitled to

an expedited hearing and, if ultimately successful on the motion, an award of court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action. *Id.* §§ 27.004, .009; *Sullivan v. Abraham*, 488 S.W.3d 294, 295 (Tex. 2016).

Dismissal under TCPA involves a two-step process. First, the defendant-movant has the burden to show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to," among other things, "the [movant's] exercise of the right of free speech." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *Schofield*, 2017 WL 2180708, at *10. If the movant satisfies this burden, then the burden shifts to the plaintiff-respondent to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

■ The clear and specific evidentiary standard may be satisfied by direct or circumstantial evidence. *See Hand v. Hughey*, No. 02-15-00239-CV, 2016 WL 1470188, at *4 (Tex. App.—Fort Worth Apr. 14, 2016, no pet.) (mem. op.) (explaining that the clear and specific standard " 'neither imposes a heightened evidentiary burden nor categorically rejects the use of circumstantial evidence when determining the plaintiff's prima-facie-case burden under the Act.' " (quoting *Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015))). But, as the supreme court has directed us, such evidence must be provided with some degree of detail. *Lipsky*, 460 S.W.3d at 590–91 (requiring "enough detail to show the factual basis for [the plaintiff's] claim"). In the context of a defamation case, pleadings and evidence that establish the facts of *"when, where, and what was said*, the defamatory nature of the statements, and how they damaged the plaintiff" should suffice to overcome a chal-

lenge under the TCPA. *Id.* (emphasis added).

## IV. STANDARD OF REVIEW

■ We are directed to construe the statute "liberally to effectuate its purpose and intent fully," *see Hotchkin v. Bucy*, No. 02-13-00173-CV, 2014 WL 7204496, at *1 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b)), and we review de novo a trial court's denial of a motion to dismiss under the TCPA. *Hand*, 2016 WL 1470188, at *3 (citing *United Food & Commercial Workers Int'l Union v. Wal–Mart Stores, Inc.*, 430 S.W.3d 508, 511 (Tex. App.—Fort Worth 2014, no pet.)). In our de novo review, we consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

## V. DISCUSSION

### A. The First Prong—Right of Free Speech

■ In her first issue, Van Der Linden argues that she met her burden in the first step of the process by showing that the TCPA applies to Khan's underlying lawsuit against her.

Khan's response is two-fold. First, he argues that because the policy reasons underlying the TCPA are not present in this case, the TCPA does not protect Van Der Linden's Message. Second, he argues that Van Der Linden has not met her burden to show that the Message was an exercise of the right to free speech as that term is defined by the TCPA. Thus, Khan contends that because his lawsuit was not based on Van Der Linden's exercise of her right to free speech, Van Der Linden failed to establish that she was entitled to file a motion to dismiss.

Khan maintains that the underlying policy of the TCPA requires us to make one ultimate determination—"whether [Khan]'s lawsuit was brought to 'chill' Van Der Linden's First Amendment Rights or rather to bring a meritorious cause of action against Van Der Linden." He suggests that if we determine that the lawsuit was not brought to chill Van Der Linden's First Amendment rights but was instead brought to assert meritorious complaints against her, then she is not entitled to seek dismissal under the TCPA. Khan contends that because he did not bring his action because Van Der Linden exercised her right to free speech—but instead solely because Van Der Linden intentionally interfered with Khan's business deals—that she has not met the first prong of the test. We disagree.

■ While our goal in applying any statute is to "ascertain and effectuate the Legislature's intent," the supreme court instructs us that the source for legislative intent is found, whenever possible, in the plain language of the statute itself. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016). And when a statute's words "yield a single inescapable interpretation," our inquiry ends. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006).

Section 27.003 provides that "[i]f a legal action *is based on, relates to, or is in response to* a party's exercise of the right of free speech," that party may file a motion to dismiss the action. Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (emphasis added). The question, then, is not whether Khan brought his lawsuit for the purpose of chilling Van Der Linden's First Amendment rights. The question is whether Khan's lawsuit is "based on, relates to, or is in response" to Van Der Linden's exercise of her right of free speech. *See id.*

■ ·"Exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "[m]atter of public concern" is defined as, among other things, "an issue related to health or safety [or] environmental, economic, or community well-being." *Id.* § 27.001(7)(A)–(B). And the TCPA applies to both public and private communication. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (referencing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508–09 (Tex. 2015)). Thus, under this statutory framework, if the Message was "made in connection with" an "issue related to health or safety [or] community well-being," it would fall squarely within the statute. Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1), (3), (7)(A)–(B).

■ For reasons so obvious that further elaboration should not be necessary, financial support for a terrorist organization is an issue related to safety and community well-being. Consequently, issues related to this topic are "matter[s] of public concern," as defined by the TCPA. *See id.* § 27.001(7)(A)–(B). Since Van Der Linden's message was made in connection with a matter of public concern, it constituted an "exercise of the right of free speech," as that term is defined in the statute. *See id.* § 27.001(3). Public policy or legislative intent notwithstanding, our inquiry ends there.[5] *See ·Alex Sheshunoff Mgmt. Servs., L.P.*, 209 S.W.3d at 651–52.

Because we hold that the Message was a communication made in the exercise of the right of free speech as defined by the TCPA, we sustain Van Der Linden's first issue.

## B. The Second Prong—Clear and Specific Evidence

Because Van Der Linden demonstrated that Khan's lawsuit implicated her exercise of the right of free speech, to prevent dismissal of the action, the burden shifted to Khan to prove, by clear and specific

---

5. Khan cites two cases to support his proposition that Van Der Linden's Message is not a matter of public concern. The first, *Miranda v. Byles*, is not applicable here because it did not involve a TCPA challenge. 390 S.W.3d 543, 548–49 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (op. on reh'g), *cert. denied*, —— U.S. ——, 135 S.Ct. 373, 190 L.Ed.2d 253 (2014). As such, the court in *Miranda* was not bound to apply the TCPA statutory definition of "matter of public concern."

The second, *Pickens v. Cordia*, was a TCPA case involving an adult child who blogged that his father was "a fear-inducing, hateful person" who subjected his children to "child abuse." 433 S.W.3d 179, 181–82 (Tex. App.—Dallas 2014, no pet.), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (holding that the TCPA applies when it is clear from the plaintiff's pleadings that the action is covered by the TCPA, i.e., even if the defendant denies having made the statement). The *Pickens* court rejected the idea that "statements of private life, such as those recounted in [the adult child's] blog, implicate the broader health and safety concerns or community well-being concerns contemplated by chapter 27," which makes sense on the facts of that case. *Id.* at 184. That is, the adult child's blog was not a general purveyor of information about addiction and child abuse; instead, it was "akin to a personal diary of his journey from drug addiction to recovery in which he [drew] upon his perceived family experiences as an explanation for his addiction." *Id. But cf. Hersh*, 526 S.W.3d at 467–68 (stating that despite nonmovants' argument that movant's personal views on publication of suicide as a cause of death in obituaries is not a matter of public concern, "[c]learly, suicide prevention and awareness relate to health, safety, and community well-being, all included in the statutory definition of 'matters of public concern' "). In contrast to the Dallas court's determination in *Pickens*, an allegation related to the financial support of a terrorist organization is not an internal family matter and such an allegation *does* implicate broader health and safety concerns, as well as community well-being concerns. Thus, *Pickens* is distinguishable on its facts.

evidence, a prima facie case for each essential element of his claims against her. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b) (providing that the court "shall" dismiss the action if the movant shows that the action relates to the exercise of the right of free speech), (c) (providing that the court may not dismiss the action if the opponent "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"). In her second issue, Van Der Linden argues that Khan failed to meet his burden of establishing, by clear and specific evidence, a prima facie case for each essential element of his alleged claims against her for tortious interference with contract, tortious interference with prospective business relations, and defamation/defamation per se. We take each cause of action in turn.

### 1. Tortious Interference with Contract

To prevail on his tortious-interference-with-contract action against Van Der Linden, Khan must prove that: (1) he had a valid contract with Sheldon Murphy; (2) Van Der Linden willfully and intentionally interfered with that contract; (3) Van Der Linden's interference proximately caused Khan's injury; and (4) Khan incurred actual damage or loss. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (op. on reh'g). Thus, to prevent dismissal of his tortious-interference-with-contract action, Khan was required to prove, by clear and specific evidence, a prima facie case for each of these four elements. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). On appeal, Van Der Linden does not challenge Khan's proof of willful and intentional interference.

#### a. No clear and specific evidence of a valid contract

With regard to the existence of a valid contract, Khan testified as follows:

Prior to Van Der Linden's [Message] to my business partner, I had entered into a verbal agreement with Sheldon Murphy and was working on finalizing another agreement with Sheldon Murphy. The first agreement that I had with Sheldon Murphy was an agreement wherein I would find a seller/producer to sell crude oil and/or other hydrocarbon products. The crude oil and/or other hydrocarbon products would be provided by a third-party. Sheldon Murphy and I would split the greater of ten-cents ($.10) or ten-percent (10%) of the margin per each barrel of crude oil or other hydrocarbon products. I had found a seller/producer to purchase 60,000 metric tons of crude oil and, my commission would have been approximately $30,000.00.

Van Der Linden cites *Serafine v. Blunt* to argue that this evidence is too vague and conclusory to support a prima facie case that a valid contract existed between Khan and Sheldon. 466 S.W.3d 352, 361 (Tex. App.—Austin 2015, no pet.) (op. on reh'g). In that case, Serafine sued the Blunts after the Blunts took down a chain-link fence that separated their properties, erected a new fence, and installed a drainage system that allegedly affected her property's lateral support. *Id.* at 356. The Blunts counterclaimed for tortious interference with their contract with the drainage and foundation company, among other things. *Id.* Serafine sought dismissal under chapter 27. *Id.* at 355.

With regard to the contract at issue, the Blunts generally asserted that they "had a valid contract with a drainage and foundation company to install a pump-and-drain system" on their property. *Id.* at 361. Specifically, they provided affidavit testimony that Alexander Blunt "hired Austin Drain-

age & Landscape Development to·professionally install a pump and drain system." *Id.* And, at the· hearing on the motion to dismiss, the trial court heard additional testimony from Alexander "that Austin Drainage was going to install French drains around the property and against the border of his house that would tie into a sump pump that would pump the water out to a pop-out valve so it would flow down into the street." *Id.*

The court held that while Alexander's statements "indicate a possible contract," he failed to provide "detail about the specific terms of the contract or attach to his affidavit any contract or other document memorializing any agreement between the Blunts and the drainage company about the scope of work to be done." *Id.* Thus, the court concluded, Alexander's testimony was "not clear and specific enough to support a rational inference that a valid contract existed between the parties." *Id.* at 362.

We agree with our sister court's approach in *Serafine.* Applying those principles here, absent from the record is any evidence of what obligation Sheldon undertook pursuant to the verbal agreement that Khan described. Aside from Khan's unilateral labeling of it as a "verbal agreement," whatever type of business arrangement Khan had with Sheldon is unclear in this record. For our purposes here, however, Khan failed to offer any proof—clear, specific, or otherwise—that it constituted a valid contract.

### b. No clear and specific evidence of a breach

Without any evidence of the obligations Sheldon undertook pursuant to his "verbal agreement" with Khan, there can be no evidence that Sheldon failed to perform his obligations under the contract, i.e., that Sheldon breached the contract.

Even assuming that Khan and Sheldon had an oral contract, we have held with regard to tortious-interference-with-contract claims that to withstand a no-evidence summary judgment challenge, a plaintiff must produce evidence of "some obligatory provision of a contract [that] has been breached." *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied).

While Khan states generally that after Van Der Linden sent the Message, Sheldon "decided not to operate under that agreement," "[did] not want to do business with [Khan]," "would not go forward with that plan," and "stated that he could not proceed with the plan," these statements do not evidence a breach of contract. At best, these statements provide evidence that a business deal between Khan and Sheldon did not go forward, but they provide no evidence that Sheldon breached an oral contract. Thus, these statements fall short of demonstrating, by clear and specific evidence, that Sheldon's action or inaction constituted a breach of any contractual obligation.

### c. No clear and specific evidence of proximate cause

As part of her second issue, Van Der Linden complains that the trial court erred by overruling her objections to Khan's evidence and challenges whether Khan produced clear and specific evidence that the Message proximately caused Sheldon to breach his contractual obligations with Khan.

#### (1) Objections

Khan submitted two affidavits in response to Van Der Linden's motion to dismiss; the second affidavit incorporated the first by reference. As to proximate cause, Khan testified as follows:

- "[A]fter Van Der Linden published the false and defamatory statements (with malice) to Sheldon Murphy (as admitted in her affidavit), Sheldon Murphy decided not to operate under that agreement and the sale fell through. I did not receive any commission, as a result, and Sheldon Murphy does not want to do business with me because of the statements at issue."

- "Mr. Murphy explained to me that he would not go forward with the transaction immediately after reading the false statement published by the defendant. Mr. Murphy said he would not go forward with that plan. I know of no other factor that contributed to his decision not to go forward with the transaction."

- "I received a telephone call from Sheldon Murphy who, in an excited manner, exclaimed to me 'What the f—— is going on!' Mr. Murphy stated he had just received the false and defamatory statement and then stated that he could not proceed with the plan."

With regard to the first paragraph recited above, Van Der Linden specifically objected to the statements—"Sheldon Murphy decided not to operate under that agreement and the sale fell through," and "Sheldon Murphy does not want to do business with me because of the statements at issue"—as hearsay and "inadmissible speculation by Khan about the state of mind of another." Van Der Linden posed those same objections to the second paragraph recited above. With regard to the last paragraph, Van Der Linden objected that "the entire paragraph is hearsay."

At the hearing on the motion to dismiss, the trial court summarily overruled all hearsay objections. And when Van Der Linden's counsel asked to be heard on his additional, nonhearsay objections, including his speculation objections, the court replied, "They're overruled."

We start with the fundamental premise that a witness's testimony regarding what another person was thinking is inadmissible speculation and should not be considered. *Phelan v. Tex. Tech Univ.*, No. 07-07-00171-CV, 2008 WL 190741, at *5 (Tex. App.—Amarillo Jan. 23, 2008, pet. denied) (mem. op.). Khan's statements that "Sheldon Murphy does not want to do business with me because of the statements at issue," and "I know of no other factor that contributed to his decision not to go forward with the transaction," were offered to prove what Sheldon was thinking—or not thinking—when he decided not go forward with the alleged contract. These statements constituted inadmissible speculation, the trial court abused its discretion by admitting them over Van Der Linden's objections, and we will not consider them as competent evidence in the record to defeat Van Der Linden's motion to dismiss. *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) ("Speculation is not evidence." (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004))).

As to the hearsay objections to the statements, "Sheldon Murphy decided not to operate under that agreement and the sale fell through," "Mr. Murphy explained to me that he would not go forward with the transaction immediately after reading the false statement published by the defendant," and "Mr. Murphy said he would not go forward with that plan," these statements fall within the "operative facts" exception to the hearsay bar. *See Irving Lumber Co. v. Alltex Mortg. Co.*, 446 S.W.2d 64, 71 (Tex. Civ. App.—Dallas

1969) ("The fact that the words were uttered is sometimes the fact to be established. Such testimony is received because the mere utterance of the words has legal significance."), *aff'd*, 468 S.W.2d 341 (Tex. 1971); *see also Byrd Int'l of Dallas, Inc. v. Elec. Data Sys. Corp.*, 629 S.W.2d 177, 180 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) (observing, in dispute between employment agency and employer, employee's statement "that he was leaving the company and did not want to work there anymore" was admissible as evidence of operative fact of voluntary termination to prove that agency owed employer a refund for fee paid under the contract). Thus, to the extent that these statements were offered to prove that Sheldon refused to go forward with a contract with Khan, these statements would be admissible to prove the operative fact of breach of contract.[6] Whether these statements may be used as proof that Sheldon's decision to breach the alleged contract was proximately caused by Van Der Linden's Message is a separate question, which will be discussed later.

As to the paragraph stating "I received a telephone call from Sheldon Murphy who, in an excited manner, exclaimed to me 'What the f—— is going on!' Mr. Murphy stated he had just received the false and defamatory statement and then stated that he could not proceed with the plan," at least the first sentence of the paragraph would appear to fall within the excited utterance exception to the hearsay bar. *See* Tex. R. Evid. 803(2). Whether Sheldon was still in an excited state when he made the second statement is unclear, but for purposes of our analysis it does not matter, as set out below.

## (2). Causation

To prevail on the prima facie showing of his tortious-interference-with-contract claim, Khan had to show that Van Der Linden took an active part in inducing Sheldon to breach his obligations under a contract with Khan, such that her tortious conduct proximately caused his damages. *See All Am. Tel., Inc.*, 291 S.W.3d at 532 (citing *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied); *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139–40 (Tex. App.—Eastland 1992, writ denied)). Proximate cause consists of two elements: cause in fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Cause in fact—meaning that the defendant's act or omission was a substantial factor in bringing about the injury, which would not otherwise have occurred—cannot be established by mere conjecture, guess, or speculation. *Id.* (holding that failure to hire a security guard, obtain police reports related to criminal activity in the area, or obtain required documents—social security cards, driver's licenses, and criminal background checks—of tenants in an apartment complex constituted no evidence of proximate cause of sexual assault by a tenant); *see also Burbage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014) (holding that a "jury cannot reasonably infer that defamation caused the [business] cancellations when

---

**6.** That mere proof of the failure to go forward, standing alone, was not sufficient to meet the clear and specific standard of proof for the element of breach, as explained above, does not render the statements inadmissible as some evidence of breach. Tex. R. Evid. 401 (defining "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence), 402 (providing that all relevant evidence is admissible, except as otherwise provided by constitution, statute, by these rules, or by other rules prescribed pursuant to statutory authority).

the cancellations could have occurred for any number of reasons," particularly since appellee never asked the customers why they cancelled their business with his company).

 When the inadmissible speculation is removed from the evidence, the remaining evidence before the court on the issue of whether Van Der Linden's Message induced Sheldon to breach a contractual obligation with Khan is Khan's testimony that

- "[A]fter Van Der Linden published the false and defamatory statements (with malice) to Sheldon Murphy (as admitted in her affidavit), Sheldon Murphy decided not to operate under that agreement and the sale fell through. I did not receive any commission, as a result . . . ."
- "Mr. Murphy explained to me that he would not go forward with the transaction immediately after reading the false statement published by the defendant. Mr. Murphy said he would not go forward with that plan."
- "I received a telephone call from Sheldon Murphy who, in an excited manner, exclaimed to me 'What the f—— is going on!' Mr. Murphy stated he had just received the false and defamatory statement and then stated that he could not proceed with the plan."

In examining the testimony that remains, notably absent is any direct evidence that the Message is what induced Sheldon to breach the contract. At most, Khan proved that the Message and the breach occurred in very close temporal proximity to one another. But from this evidence, the trial court was left to speculate as to whether the timing of these events was a coincidence or whether a cause-and-effect relationship existed between them.

 Given the temporal proximity between the Message and Sheldon's decision not to go forward with the contract, one might suspect that the Message factored into Sheldon's decision. But just as conjecture, guess, or speculation will not survive a proximate cause sufficiency challenge in the summary judgment context, conjecture, guess, or speculation cannot survive "clear and specific" scrutiny under chapter 27. *See Urena*, 162 S.W.3d at 551; *see also* Tex. R. Civ. P. 166a. *But see Tex. Campaign for the Env't v. Partners Dewatering Int'l, LLC*, 485 S.W.3d 184, 197 (Tex. App.—Corpus Christi 2016, no pet.) (holding in a tortious-interference-with-contract case that an environmental organization's claim of "victory" over wastewater contract's termination in online postings, when considered with other evidence, met clear-and-specific evidence standard for proximate cause within the meaning of civil practice and remedies code section 27.005(b)).

Khan did not offer affidavit testimony from Sheldon, the one person who personally knew why he refused to go forward with the alleged contract. So, once the impermissibly speculative evidence from Khan's affidavits is disregarded, there is simply no evidence, let alone clear and specific evidence, that *but for* the Message, any contract between Khan and Sheldon would have gone forward.

Because Khan failed to meet his burden of producing clear and specific evidence of a prima facie case for each of the above essential elements of his tortious-interference-with-contract claim,[7] the trial court erred by denying Van Der Linden's chap-

---

7. Based on the above, we need not reach whether, as argued by Van Der Linden, Khan

also failed to meet his burden to show that he

ter 27 motion to dismiss as to this claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We sustain this part of Van Der Linden's second issue.

## 2. Tortious Interference with Prospective Business Relations

Khan contends that Van Der Linden interfered with his verbal agreement to purchase Sheldon and Loretta Murphy's interests in WHAM, LLC, a deal that, according to Khan, was in "the final stage" of negotiations. A prima facie case of his tortious-interference-with-prospective-business-relations claim against Van Der Linden would show: (1) a reasonable probability that Khan and the Murphys would have entered into a contractual relationship; (2) that an independently tortious or wrongful act by Van Der Linden prevented the relationship from occurring; (3) that Van Der Linden did the act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of the conduct; and (4) that Khan incurred actual harm or damage as a result of Van Der Linden's interference. *See Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 632–33 (Tex. App.—Fort Worth 2007, pet. denied) (op. on reh'g). Van Der Linden did not challenge the third element—addressing her conscious desire or knowledge—in her motion to dismiss, and she does not raise that ground on appeal.

### a. No clear and specific evidence that a relationship would have occurred or that Van Der Linden's act prevented that relationship from occurring

▮ Assuming, without holding, that the record contains clear and specific evidence of a reasonable probability that Khan and the Murphys would have entered into a contractual relationship, the record nevertheless remains silent as to whether Van Der Linden's conduct[8] prevented any prospective business relations between Khan and the Murphys from going forward. As set forth above, once the impermissibly speculative evidence in Khan's affidavits is disregarded, all that remains is evidence of a temporal proximity between the Message and the breakdown in negotiations between Khan and Sheldon Murphy. There is no evidence in this record, let alone clear and specific evidence, that *but for* the Message, a reasonable probability existed that the prospective deal between Khan and the Murphys would have gone forward. *Compare COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 679 (Tex. App.—Dallas 2004, pet. denied) (construing the element "prevented the relationship from occurring" to require that the tortious conduct constitute "a cause in fact," or "but for causation"), *and Gonzalez v. Gutierrez*, 694 S.W.2d 384, 390 (Tex. App.—San Antonio 1985, no writ) (limiting recoverability of damages to those sustained as "a natural and proximate consequence of the interference" and finding no evidence that *but for* the interference, plaintiff "would have been awarded a specific contract, bid, or lease"), *with Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 124 (Tex. App.—El Paso 1997, pet. denied) (stating that while it is not necessary to prove that the contract would have certainly been made but for the interference, it must be reasonably probable, considering all of the facts and circumstances attend-

---

incurred actual damage or loss as to this claim. *See* Tex. R. App. P. 47.1.

8. We will discuss whether Khan provided clear and specific evidence that Van Der Linden engaged in an independently tortious or wrongful act in our discussion regarding defamation per se below.

ant to the transaction), *and Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex. App.—Corpus Christi 1991, writ denied) (same).

### b. No clear and specific evidence of actual harm or damage

 In his affidavits, Khan provided various estimates of what he would have earned had the WHAM agreement with the Murphys been consummated. He stated both that his "projected income" from the WHAM purchase "was set to be $500,000 annually" and that the profits would be "far more than $500,000." In his supplemental affidavit, he stated that, after studying the project and its potential for profit, in his opinion—based on his "experience and education"—he would have made "a substantial profit from that project, certainly more than one million dollars."

 Although Khan's statements may constitute some evidence that he suffered harm or damage as a result of the failure of the WHAM transaction to go forward, these statements are not sufficient to establish a prima facie case of actual harm or damage under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The supreme court has instructed us that "general averments of direct economic losses and lost profits"—even when a dollar amount is specified—do not satisfy the minimum requirements of the TCPA. *Lipsky*, 460 S.W.3d at 593. More than mere recitation of estimated damages is required. *Id.*

In applying its holding that "[o]pinions must be based on demonstrable facts and a reasoned basis," the supreme court in *Lipsky* held that a statement in an affidavit that damages were "in excess of three million dollars" did not meet the clear and specific, prima facie proof standard, stating,

Range's vice president averred in general terms that Lipsky's statements caused Range to suffer "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates . . . in excess of three million dollars." The court of appeals concluded that the affidavit, "by stating that Range had suffered direct economic losses and 'lost profits,'" was sufficient "to raise a rational inference . . . that Range lost 'trade or other dealings' as a result of statements made by Steven Lipsky."

Lipsky argues, however, that the affidavit is conclusory and therefore insufficient to satisfy the TCPA's requirement of "clear and specific evidence," and we agree. Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA.

*Id.* at 592–93 (footnote and citations omitted).

Here, as in *Lipsky*, there are no "demonstrable facts" or a "reasoned basis" for Khan's opinion regarding damages. *See id.* Because there is no evidence of any specific facts illustrating how these damages were calculated, Khan has failed to provide clear and specific evidence of actual harm or damage sufficient to defeat Van Der Linden's challenge under chapter 27. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

Because Khan failed to meet his burden of producing clear and specific evidence of a prima facie case for each essential element of his tortious-interference-with-prospective-business-relations claim discussed above, the trial court erred by denying Van Der Linden's chapter 27 motion to dismiss as to this claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Thus, we

sustain this part of Van Der Linden's second issue.

### 3. "Defamation/Defamation Per Se"

The elements of a defamation action include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages. *Lipsky*, 460 S.W.3d at 593. To prove a defamation per se claim, Khan must prove the first three elements, but not the fourth element, as he would be entitled to recover general damages without proof of any specific loss. *Id.* at 596. This is because, as defamation per se, the statements are so obviously harmful that damages, such as mental anguish and loss of reputation, are presumed. *Id.*

Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation per se. We agree. *See id.* (stating that "[a]ccusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se"). Therefore, to determine whether Khan's defamation action survived Van Der Linden's chapter 27 motion to dismiss, we look only for clear and specific evidence to as to the first and third elements.

#### a. Evidence of Falsity

Van Der Linden claims that Khan told her during a private discussion that he had given money to the Taliban. Khan denied that he told her that, swearing that "I have never given money to the Taliban nor did I tell her that I have given money to the Taliban." In his affidavit, Khan also attempted to explain why Van Der Linden's claim should not be worthy of belief, urging that "[i]t defies logic that [he] would make such a radical statement to a former Colonel of the United States Air Force."

The evidence Khan offered was clear and specific—that he had never given money to the Taliban, nor did he ever tell Van Der Linden that he had. And, as Van Der Linden alleges that there were only two parties to this oral communication, Khan could hardly offer more to refute her claim. Thus, as to the first element, whether the Message—that Khan had personally told her that he had given money to the Taliban—was false, Khan met his burden under chapter 27 to establish by clear and specific evidence a prima facie case for the essential element of falsity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

The dissent argues that if Khan's statement that he did not tell Van Der Linden that he gave money to the Taliban can suffice as clear and specific evidence to defeat Van Der Linden's motion to dismiss, then Van Der Linden's statement that Khan did tell her that he gave money to the Taliban would suffice to meet Van Der Linden's burden to prove the affirmative defense of truth. Either way, the dissent argues, "the trial court was required to dismiss Khan's claim."

The logic of this argument is appealing. But we must also consider history and precedent. At common law, the falsity of a defamatory statement was presumed, and truth was an affirmative defense. *Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762, 766 (Tex. 1987) ("Regarding falsity, the common law presumed the defamatory statement to be false and truth was a defensive matter."). But in 1964, the Supreme Court shifted the burden of proof for cases that implicate First Amendment rights. *New York Times Co. v. Sullivan*, 376 U.S. 254, 278–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). Now, when a case implicates constitutional issues—i.e., when a case involves a public official, a media defendant, or a matter of public concern,

or any combination thereof—the burden is upon the plaintiff to prove falsity, not upon the defendant to prove truth. *See, e.g., Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 777, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783 (1986) (placing burden of proving falsity on plaintiff in case involving private individual and media defendant on matter of public concern); *Huckabee v. Time Warner Entm't Co.,* 19 S.W.3d 413, 416, 420 (Tex. 2000) (placing burden of proving falsity on plaintiff in case involving public individual and media defendant on matter of public concern); *Casso v. Brand,* 776 S.W.2d 551, 552, 554 (Tex. 1989) (placing burden of proving falsity on public-official plaintiff in a case involving private, non-media defendant on matter of public concern).

In 1985, however, the Supreme Court breathed life back into the affirmative defense of truth when it held that states (like Texas) could apply the common law to defamation actions that did not implicate the First Amendment, i.e., actions between private individuals and non-media defendants involving private issues. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759–61, 105 S.Ct. 2939,

2945–46, 86 L.Ed.2d 593 (1985). Although the Message here was part of a private dispute between a private individual and a non-media defendant, we have also held that the Message was not a private issue, but a matter of *public concern.*[9] Therefore, even considering the holding in *Dun & Bradstreet,* the common law affirmative defense of truth still does not apply.[10] Thus, common-law principles do not apply, and Van Der Linden bears no burden to prove truth.[11]

Practically speaking, if the law were otherwise, it is difficult to envision how the jury would be charged. On the one hand, the jury would be asked to decide if the statement was false, and then, on the other hand, the jury would be asked to decide if the statement was true. Instead, Pattern Jury Charge 110.4 instructs trial courts to place the burden of proving falsity on the plaintiff by asking, "Was the statement *[insert matter alleged to be defamatory]* false at the time it was made as it related to *Paul Payne*?" Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business* PJC 110.4 (2014). Then it further instructs that the affirma-

---

**9.** Indeed, the TCPA would not even come into play unless this statement was a matter of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) (stating that "[i]f a legal action is based on, relates to, or is in response to a party's *exercise of the right of free speech* ... that party may file a motion to dismiss the legal action" (emphasis added)); *see also id.* § 27.001(3) (stating that " '[e]xercise of the right of free speech' means a communication made in connection *with a matter of public concern*" (emphasis added)).

**10.** This general rule is addressed in numerous treatises and law review articles, but it is perhaps most succinctly summed up in the law review article, *The Visual Artist and the Law of Defamation:*

> Where the defamatory statement was part of a private dispute, it is presumed to be false. The defendant has the burden of prov-

ing that the statement was true as an affirmative defense. If the defendant is successful, it will be a complete defense to the defamation action. *Where the statement involved a matter of public interest or concern, the plaintiff has the burden of proving the statement was false.*

Robert C. Lind, *The Visual Artist and the Law of Defamation,* 2 UCLA Ent. L. Rev. 63, 107 (1995) (emphasis added) (footnotes omitted).

**11.** Van Der Linden acknowledged as much in her pleadings. While she clearly pleaded "the *affirmative defense* of justification" and "the common interest privilege" with regard to the issue of truth or falsity, her pleadings stated, "Pleading further, and *without admitting she bears the burden of pleading or proof on the issue,* Van Der Linden pleads that any statement she made about Plaintiff was true, or substantially true." [Emphasis added.]

tive defense of truth question—PJC 110.8—which asks, "Was the statement ... substantially true at the time it was made as it related to *Paul Payne*" should be submitted "only in cases involving a private party plaintiff regarding a matter of exclusively private concern...." *Id.* PJC 110.8 & cmt.

If there were any remaining doubt on this point, the supreme court has recently addressed this identical argument. *D Magazine Partners, L.P. v. Rosenthal*, No. 15-0790, 529 S.W.3d 429, 440–41, 2017 WL 1041234, at *9 (Tex. Mar. 17, 2017). In *D Magazine*, the court held that on matters of public concern, the plaintiff bears the burden to prove falsity, and the affirmative defense of truth does not come into play:

> D Magazine argues that, *even if we conclude that Rosenthal established a prima facie case of defamation, it is still entitled to dismissal under the TCPA because it established [the] affirmative defense[ of] truth ... by a preponderance of the evidence.* See Tex. Civ. Prac. & Rem. Code § 27.005(d). We disagree.
>
> ... [A]lthough truth is generally a defense to defamation, the burden shifts to the plaintiff to prove falsity in cases involving matters of public concern. *Neely [v. Wilson]*, 418 S.W.3d [52,] 56, 62 [ (Tex. 2013) ]. Falsity is thus an element of Rosenthal's defamation claim. By contrast, an affirmative defense, such as the statute of limitations, is *"based on a different set of facts from those establishing"* the cause of action and "defeats the plaintiff's claim without regard to the truth of the plaintiff's assertions." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015) (citations omitted). Because *falsity is an element of Rosenthal's claim*, at this stage of the proceedings *she was required to make a prima facie case* by clear and specific

evidence that the gist of the article was not substantially true. Tex. Civ. Prac. & Rem. Code [Ann.] § 27.005(c). As discussed, *Rosenthal has met this burden.*

*Id.* (emphases added). Thus, the supreme court has rejected the argument that in a case involving a matter of public concern, once a plaintiff has met his burden to establish by clear and specific evidence a prima facie case for falsity, the motion to dismiss can be defeated by providing evidence to the contrary. *Id.*

### b. Evidence of Degree of Fault (Negligence)

■ As to the third element, whether the publication was made with the requisite degree of fault, Khan's status determines the degree of fault to be applied in this case. *See Lipsky*, 460 S.W.3d at 593. Because Khan was a private individual, rather than a public figure or official, Khan need only prove that Van Der Linden acted with negligence. *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (explaining that a private plaintiff must prove only that the defendant "was at least negligent," whereas a public official or public figure must establish actual malice, which is a higher degree of fault than negligence), *cert. denied*, 526 U.S. 1051, 119 S.Ct. 1358, 143 L.Ed.2d 519 (1999). Van Der Linden argues that Khan failed to prove negligence because he failed to offer any proof that she "knew or should have known that the statement in question was false." The dissent voices a similar concern that Khan failed to produce "clear and specific evidence that Van Der Linden failed to investigate the truth or falsity of her statements before publication."

These both reflect correct statements of the law, but here, this case's specific facts drive the analysis. Had the Message stated that "Khan has given money to the Tali-

ban," we might debate whether there is any evidence in this record that Van Der Linden knew or should have known that the statement was false, or whether she had a duty to investigate prior to sending the Message. But Van Der Linden did not say that. She said, "[Khan had] told [her] PERSONALLY (not via hearsay) that he has given money to the Taliban." So, with regard to truth or falsity, the question is not whether Khan gave money to the Taliban, the question is whether Khan *told* Van Der Linden that he gave money to the Taliban. This fact narrows our analysis considerably.

According to Van Der Linden, she and Khan engaged in a private conversation. During that conversation, either Khan said that he gave money to the Taliban or Khan did not say that he gave money to the Taliban. Only the two parties to the conversation—Van Der Linden and Khan— know which proposition is true.

Because Van Der Linden knows the truth—whatever it may be—if Khan did not say that he gave money to the Taliban, then Van Der Linden's assertion to the contrary was not only false but also was made with knowledge that the assertion was false. In other words, if it was false, then Van Der Linden knew it was false; if it was true, then Van Der Linden knew that it was true. Either way, Van Der Linden knows the truth, as does Khan. And, under these narrow facts, any evidence that proved that Van Der Linden's assertion was false would also logically and necessarily prove that Van Der Linden knew that her assertion was false.

Van Der Linden argues that allowing the same evidence to prove falsity to also prove the requisite degree of fault would "return [us] to the strict liability theory the United States Supreme Court found to be inconsistent with First Amendment protections in *Gertz v. Robert Welch, Inc.,*

418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *see also*[ ] *Foster* [*v. Laredo Newspapers, Inc.*], 541 S.W.2d [809,] 819 [ (Tex. 1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977) ]." This argument, while facially attractive, misses the point of *Gertz.* While the Supreme Court in *Gertz* did reject the notion of "strict liability" in defamation actions, it explained its holding to mean that states are not free to impose defamation liability without applying *some* standard of care to the conduct, stating,

We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.

418 U.S. at 347, 94 S.Ct. at 3010.

By holding that under the circumstances unique to this case, the same evidence that proves falsity also proves the requisite standard of liability, we do not dispense with the element of fault. We merely acknowledge the inescapable, logical conclusion that if the facts conclusively prove that the publisher of a defamatory statement had personal knowledge of whether the statement was true or false, proving the statement false also suffices to prove that the defamatory publisher acted with knowledge of the statement's falsity when she published it. Van Der Linden need not conduct an investigation to determine whether the content of the Message was true or false because under these limited facts, at the time she sent it, she already knew the answer.

Thus, for the same reasons that Khan met his burden under chapter 27 to provide by clear and specific evidence a prima facie case for falsity, Khan has also satisfied his burden of providing clear and specific evidence of a prima facie case that Van Der Linden knew that the statement

in question was false. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Khan offered clear and specific evidence that he did not tell Van Der Linden that he had given money to the Taliban. Van Der Linden admits that she and Khan were the only two parties to the conversation. Under these unique facts, if at trial Khan proves that the assertion was false, he also will have provided proof that Van Der Linden knew that it was false when she published it. Just because under these facts the same evidence that proves falsity would also prove knowledge of falsity does not mean that Van Der Linden would not be held to the "knew or should have known" standard of care.

The dissent argues that because Khan sought exemplary damages over and above his general damages, he must prove a higher standard than mere negligence. First, neither in her motion to dismiss nor in the hearing thereon did Van Der Linden challenge Khan's entitlement to pursue exemplary damages in connection with his defamation/defamation per se claim. Nor did Van Der Linden argue or brief this contention on appeal.

 But even if this issue were fairly before this court for determination, this contention would fail. While we agree that to recover exemplary damages, Khan's proof must ultimately meet a higher threshold—a higher degree of fault (proof of malice or gross negligence),[12] a more stringent burden of proof (clear and convincing evidence), and the vote of a

unanimous jury, *see* Tex. Civ. Prac. & Rem. Code Ann. § 41.001 (West Supp. 2017), § 41.003 (West 2015)—these heightened standards do not alter the elements of Khan's underlying claim for defamation/defamation per se. These additional burdens act only as a potential barrier to the damages Khan might recover should Khan prevail on his legal action for defamation/defamation per se at trial. As will be discussed below, the TCPA applies to the dismissal of causes of action, not remedies, and while obtaining an award of exemplary damages might require further proof at trial, the elements Khan must prove to recover general damages under his legal action for defamation/defamation per se remain unchanged.

Because we hold that Khan met his burden of producing clear and specific evidence of a prima facie case for each essential element of his defamation/defamation per se claim, we overrule the remainder of Van Der Linden's second issue challenging this claim and affirm the trial court's denial of Van Der Linden's chapter 27 motion to dismiss Khan's defamation/defamation per se claim. *See id.* § 27.005(c).

## C. Khan's Request for Injunctive Relief

In Van Der Linden's third issue, she argues that Khan's request for injunctive relief, if granted, would be unconstitutional and that Khan failed to meet his clear and

---

12. "Malice" in the context of exemplary damages is different from "actual malice" in defamation actions. Unlike common-law malice, actual malice in a defamation case does not include ill-will, spite, or evil motive. *Casso*, 776 S.W.2d at 558. Rather, to establish actual malice, a plaintiff must prove that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Compare* Tex.

Civ. Prac. & Rem. Code Ann. § 41.001(7) (West Supp. 2017) (defining "malice" as "a specific intent by the defendant to cause substantial injury or harm to the claimant"), with *New York Times*, 376 U.S. at 279–80, 84 S.Ct. at 726 (defining "actual malice" as "knowledge that [the statement made] was false or [was made] with reckless disregard of whether it was false or not").

specific, prima facie burden with respect to his cause of action for injunctive relief.[13]

First, we note that the trial court did not grant injunctive relief. More to the point, however, injunctive relief is a remedy, not a stand-alone cause of action. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex. App.—Fort Worth 1982) (holding that in order to be entitled to injunctive relief, an applicant must demonstrate "the existence of a wrongful act," and "[w]ithout unlawful conduct or proof of intent to commit such conduct, any remedy is improper"), *aff'd*, 647 S.W.2d 246 (Tex. 1983). The TCPA provides for dismissal of actions, not remedies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a) ("If a *legal action* is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss *the legal action*." (emphasis added)). Because when a legal action is dismissed pursuant to the TCPA, all remedies available under that legal theory disappear with the dismissal of the action itself, a chapter 27 challenge to a request for injunctive relief should be directed at the underlying legal action, not at the requested remedy.[14] Accordingly, without reaching Van Der Linden's argument regarding constitutionality, we overrule her third issue.

## D. Van Der Linden's Request for Attorney's Fees

In Van Der Linden's final issue, she argues that in the event we hold that Khan failed to meet his TCPA burden, we should remand the case to the trial court "to determine the amount of costs and attorney's fees due Van Der Linden under the TCPA." We agree.

Having sustained part of Van Der Linden's second issue on appeal, we must reverse the trial court's decision denying the motion to dismiss as to Khan's causes of action for tortious interference with contract and tortious interference with prospective business relations. Civil practice and remedies code section 27.009 mandates that if an action is dismissed under the TCPA, the trial court "shall award to the moving party court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1). Because the trial court has not yet had the opportunity to determine the amount of court costs, attorney's fees, and other expenses that justice and equity require and that should be awarded to Van Der Linden, we must remand the case to the trial court to make these determinations.

---

13. Van Der Linden's Motion to Dismiss contained one paragraph related to this issue. In that paragraph, Van Der Linden stated,

Khan also seeks the entry of a temporary and permanent injunction enjoining Van Der Linden from making "further deceitful and misleading" statements about Khan. The issuance of such an injunction would be an unconstitutional prior restraint forbidden by the First Amendment to the Constitution of the United States and Article 1, Section 8 of the Texas Constitution. Even an injunction against future speech which has been adjudicated to be defamatory cannot withstand constitutional scrutiny, and so surely an injunction forbidding "deceitful and misleading" speech cannot be allowed.

[Citations omitted.]

14. Other procedural mechanisms, independent of chapter 27, exist to challenge a party's right to injunctive relief. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); *Lewis v. Bell Helicopter Textron, Inc.*, No. 02-14-00065-CV, 2015 WL 3542887, at *1 (Tex. App.—Fort Worth June 4, 2015, pet. denied) (mem. op.) (considering the trial court's denial of requested injunctive relief in the context of a summary judgment proceeding).

## VI. CONCLUSION

We affirm the portion of the trial court's order denying Van Der Linden's motion to dismiss as to Khan's defamation/defamation per se claim. Having sustained Van Der Linden's first and fourth issues and part of her second issue, we reverse the remainder of the trial court's order denying Van Der Linden's motion to dismiss. We remand the case to the trial court to enter an order of dismissal as to Khan's claims for tortious interference with contract and tortious interference with prospective business relations and for further proceedings consistent with this opinion.

GABRIEL, J., filed a concurring and dissenting opinion.

LEE GABRIEL, JUSTICE, concurring and dissenting.

I agree with the majority that based on a de novo review, the trial court erred by denying appellant Kathryn Van Der Linden's motion to dismiss appellee Dr. Nadeem Khan's claims for tortious interference with a contract and tortious interference with prospective business relations under the Texas Citizens Participation Act (the TCPA). But I respectfully disagree with the majority's holding that the trial court did not err by denying the motion as to Khan's claims for defamation and defamation per se.[1] While

I disagree with portions of the majority's opinion, I certainly understand its thorough reasoning. In law, as in life, these disagreements happen. It is the blessing and the curse of many legal disputes: reasonable minds can differ.

## I. SHIFTING BURDENS UNDER THE TCPA

### A. APPLICATION OF THE TCPA BY A PREPONDERANCE OF THE EVIDENCE

As the majority recognizes, Van Der Linden satisfied her initial burden under the TCPA to show by a preponderance of the evidence that Khan's claim for defamation per se was based on, related to, or was in response to Van Der Linden's exercise of the right to free speech on a matter of public concern—community well-being. See Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(3), (7), 27.003(a), 27.005(b) (West 2015). After Van Der Linden met her burden to show that it was more likely than not that the TCPA applied to Khan's claim, the burden then shifted to Khan to establish a prima facie case of each essential element of defamation per se through clear and specific evidence. See id. § 27.005(c); Hersh v. Tatum, 526 S.W.3d 462, 468 (Tex. 2017); Lipsky, 460 S.W.3d at 589. Whether Khan did so is the point upon which I and the majority diverge.

---

1. The majority expressly affirms "the portion of the trial court's order denying Van Der Linden's motion to dismiss as to Khan's defamation/defamation per se claim." But to avoid dismissal of his defamation claim, Khan was required to provide clear and specific evidence of his damages, an essential element of his defamation claim. See Brady v. Klentzman, 515 S.W.3d 878, 886 (Tex. 2017) ("[I]f the statement is not defamatory per se, ... the plaintiff must prove actual damages to prevail. ... Absent evidence of actual damages in a case of defamation ..., judgment should be rendered for the defendant."). The majority concludes, and I agree, that Khan failed to do

so regarding his claim for tortious interference with prospective business relations, which scuttles his defamation claim as well. See Bedford v. Spassoff, 520 S.W.3d 901, 905–06 (Tex. 2017); In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). In addition, because Van Der Linden's alleged statements are defamatory per se, Khan cannot state a prima facie claim for defamation. See Levine v. Steve Scharn Custom Homes, Inc., 448 S.W.3d 637, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Accordingly, I dissent from the majority's holding affirming the trial court's ruling regarding Khan's defamation claim.

## B. CLEAR AND SPECIFIC EVIDENCE OF PRIMA FACIE CASE

The TCPA burdens implicating the amount and quality of evidence necessary for Khan to avoid pretrial dismissal of his claim for defamation per se are easy to recite, yet more difficult to apply in practice. But it is necessary to carefully examine what each term means in order to properly determine if the pleadings and evidence, direct and circumstantial, met those respective burdens. A prima facie case of an essential element is more than notice pleading and requires evidence that, if not rebutted or contradicted, would establish the fact as a matter of law. *See Lipsky*, 460 S.W.3d at 590–91, 593. In short, the term refers to the minimum *amount* of evidence required to support a rational inference that the allegation is true. *See Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.) (op. on reh'g). Clear and specific evidence is the *quality* of the evidence required to establish a prima facie case. *See id.* Although not defined by statute, clear and specific evidence has been defined as evidence that is unambiguous, sure, and explicit, providing enough detail to reveal a factual basis for the claim. *See Bedford*, 520 S.W.3d at 904; *Lipsky*, 460 S.W.3d at 590–91. Such evidence, then, is more than "general, debatable evidence, but" is evidence "that provide[s] explicit proof as to the particular fact at issue." *Schofield v. Gerda*, No. 02-15-00326-CV, 2017 WL 2180708, at *15 n.14 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.). Therefore, the quality of Khan's evidence must be more than conclusory, bare, or self-serving statements. *See Lipsky*, 460 S.W.3d at 592; *Schofield*, 2017 WL 2180708, at *26; *Fawcett v. Grosu*, 498 S.W.3d 650, 660 (Tex. App.—Houston

[14th Dist.] 2016, pet. denied) (op. on reh'g).

For his claim for defamation per se, Khan—a private plaintiff suing a non-media defendant—was required to proffer clear and specific evidence, establishing a prima facie case, (1) that Van Der Linden published a statement of fact to a third party, (2) which was defamatory per se regarding Khan, and (3) with the requisite degree of fault. *See Lipsky*, 460 S.W.3d at 593, 596; *Fawcett v. Rogers*, 492 S.W.3d 18, 25 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (op. on reh'g); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2017) (defining libel). I agree with the majority that Khan provided clear and specific evidence that Van Der Linden's alleged statements constituted defamation per se—accusing Khan of a crime—thereby establishing a prima facie case of the second element of his claim. *See* 18 U.S.C.A. §§ 2339A–2339C (West 2015 & Supp. 2016) (prohibiting the provision of support to terrorists and terrorist organizations); *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (recognizing statement imputing a crime is defamatory per se).

But I disagree that Khan met his burden regarding the third element of his claim for defamation per se—the degree of fault by Van Der Linden. Generally, the requisite degree of fault is negligence based on Khan's status as a private individual. *Lipsky*, 460 S.W.3d at 593; *Grosu*, 498 S.W.3d at 662. However, Khan alleged in his petition that Van Der Linden was liable for defamation per se and alleged that she made the challenged statements "maliciously," "with the knowledge of, or reckless disregard for, their falsity," and with "actual malice." He further sought exemplary damages arising from this claim.[2] Khan, therefore, had to provide

---

2. Khan's own allegations of his claim for defamation per se, not solely his request for

clear and specific evidence that Van Der Linden acted with reckless disregard as to the truth or falsity of her statements, not mere negligence. *See* 4 J. Hadley Edgar Jr. & James B. Sales, *Texas Torts and Remedies* § 52.02[4] (2015 ed.) ("Knowledge of a statement's falsity or reckless disregard of a statement's falsity also constitutes a showing of malice, which is a necessary *element* of defamation when . . . a plaintiff seeks the recovery of exemplary damages." (emphasis added) (footnotes omitted)).

To show reckless disregard for the truth, Khan must provide clear and specific evidence that Van Der Linden in fact entertained serious doubts as to the truth of her statements or evidence that she actually had a high degree of awareness of the probable falsity of her statements. *Cf. Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005) (discussing evidence of reckless disregard in context of summary-judgment proceeding between public-official plaintiff and media defendant). I would conclude that Khan's affidavit statements that the conversations between him and Van Der Linden never occurred and that he never said what Van Der Linden ascribed to him are not clear and specific evidence that Van Der Linden acted with the requisite degree of fault.[3] *See Guntheroth v. Rodaway*, 107 Wash.2d 170, 727 P.2d 982, 985–86 (1986) (holding private plaintiff failed to establish genuine issue of material fact as to fault for defamation claim against non-media defendant under either preponderance or clear-and-convincing standard); *cf. Reyna v. Baldridge*, No. 04-14-00740-CV, 2015 WL 4273265, at *6 (Tex. App.—San Antonio July 15, 2015, no pet.) (mem. op.)

(discussing detailed evidence proffered by plaintiff meeting clear-and-specific standard to show prima facie case of reckless disregard for the truth). Indeed, Khan's bare disclaimers, which make insufficient reference to Van Der Linden's degree of fault, are nothing more than a general statement of a claim, which would meet only a notice-pleading standard and not a clear-and-specific standard.

Even if the standard were mere negligence, Khan failed to establish his prima facie case. *See Lipsky*, 460 S.W.3d at 592–93; *accord Guntheroth*, 727 P.2d at 985–86; *cf. Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *10 (Tex. App.—Austin Aug. 3, 2017, no pet.) (mem. op.) (holding defamation defendants' affidavit statements, which lacked factual support, did not establish affirmative defense of truth by a preponderance under the TCPA). Under a negligence fault standard, Khan was required to produce clear and specific evidence that Van Der Linden failed to investigate the truth or falsity of her statements before publication and failed to act as a reasonably prudent person. *See Grosu*, 498 S.W.3d at 662. Khan's affidavit statements do not provide clear and specific evidence that Van Der Linden did so. *Cf. Rogers*, 492 S.W.3d at 27 (holding private plaintiff provided sufficient proof that non-media defendants failed to investigate to satisfy burden under TCPA to establish fault element of defamation per se claim).

I also respectfully disagree with the majority's holding that because only two people were involved in one of the two con-

---

exemplary damages, would also seem to dictate the degree of fault that he must establish by clear and specific evidence. *See generally Monsanto Co. v. Milam*, 494 S.W.2d 534, 536 (Tex. 1973) ("The specific allegation controls over the general allegation.").

3. In several paragraphs of his affidavits and using different language each time, Khan denied that the conversations with Van Der Linden ever took place and stated that he never gave money to a terrorist organization or that he had told anyone that he had.

versations leading to Van Der Linden's statements—Van Der Linden and Khan[4]—Khan's summary denials necessarily constituted clear and specific evidence of both falsity and fault. But because falsity is generally presumed in defamation cases involving a private plaintiff and a non-media defendant, this presumed falsity could not also provide clear and specific evidence of fault. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Khan's affidavit statements do not provide clear and specific evidence of the required degree of fault by Van Der Linden and, therefore, cannot meet his burden to establish a prima facie case of fault no matter the circumstances of the genesis of Van Der Linden's alleged defamatory statements. To hold otherwise would seem to impose a different evidentiary requirement to defamation cases involving a two-party conversation than that stated in the TCPA.

### C. AFFIRMATIVE DEFENSE BY A PREPONDERANCE OF THE EVIDENCE

I further believe that based on the majority's assessment of the amount and quality of Khan's evidence showing a prima facie case of defamation per se, the trial court necessarily erred by denying Van Der Linden's motion to dismiss based on her affirmative defense of truth. Even assuming that Khan met his burden to establish a prima facie case of defamation per se through clear and specific evidence of each necessary element, the burden then shifted back to Van Der Linden to establish only by a preponderance of the evidence each essential element of a valid defense to Khan's claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *United Food & Comm'l Workers Int'l Union v. Wal–Mart Stores, Inc.*, 430 S.W.3d 508, 513 (Tex. App.—Fort Worth 2014, no pet.); *see also Randall's Food*, 891 S.W.2d at 646 (holding, for private-individual plaintiff against non-media defendant, falsity generally presumed and truth of statement is affirmative defense).[5] If Van Der Linden met this burden, the trial court was required to dismiss Khan's claim even if Khan met his burden to establish a prima facie case by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *United Food*, 430 S.W.3d at 511.

In her answer to Khan's petition and in her motion to dismiss, Van Der Linden raised and argued the affirmative defense of truth. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.005(a) (West 2017); *Randall's Food*, 891 S.W.2d at 646. In her affidavit, she averred that Khan told her in two

---

4. Khan's then-wife was present for one of the conversations.

5. As discussed by the majority, the supreme court recently held in the context of the TCPA that because falsity is an essential element in some defamation claims, truth cannot be an affirmative defense. *D Magazine Partners, L.P. v. Rosenthal*, No. 15-1790, 529 S.W.3d 429, 440–41, 2017 WL 1041234, at *9 (Tex. Mar. 17, 2017). But that case involved a media defendant, which implicated different defenses and burdens than claims brought against a non-media defendant. *See Neely v. Wilson*, 418 S.W.3d 52, 56, 62 (Tex. 2013). Here, falsity is not an essential element to be proved under the TCPA because it is presumed and because Van Der Linden is not a media defendant; thus, I believe truth remains a viable affirmative defense for Van Der Linden. *See Randall's Food*, 891 S.W.2d at 646; *Dallas Morning News, Inc. v. Hall*, 524 S.W.3d 369, 371, 374 (Tex. App.—Fort Worth 2017, pet. filed); *Vice v. Kasprzak*, 318 S.W.3d 1, 17 n.9 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). This is true even though the subject of the statement involves a matter of public concern. *See Camp*, 2017 WL 3378904, at *7; *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at *10 (Tex. App.—Fort Worth Apr. 30, 2015, pet. denied) (mem. op.).

conversations that he had given monetary support to a terrorist organization and that the actions taken by such organizations did not bother him because he "preferred animals over people." As the majority perceptively points out, Van Der Linden did not state that Khan had, in fact, given support to a terrorist organization but that Khan said he had done so. Therefore, the affirmative defense is measured against that statement.

Van Der Linden averred that Khan, in fact, made the statements to her that she then published. If Khan's antipodal denials equated to clear and specific evidence of his prima facie case, then Van Der Linden's affidavit contention that Khan did indeed make the statements to her would constitute a preponderance of evidence establishing her affirmative defense. As such, the trial court was required to grant her motion to dismiss directed to Khan's claim for defamation per se under the TCPA.

## II. CONCLUSION

The purpose of the TCPA is not only to protect Khan's right to file a meritorious lawsuit but also to protect Van Der Linden's right to "speak freely." Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (West 2015); see Lipsky, 460 S.W.3d at 589. These competing goals and the "murky," perhaps overly broad, language of the TCPA make legal analysis difficult, especially in defamation cases involving a basic swearing match, and could result in deterring meritorious defamation claims under the guise of combating abusive litigation. Serafine, 466 S.W.3d at 365, 369, 375–76 (Pemberton, J., concurring). But we still

are bound by its explicit textual provisions. See id. at 367 (Pemberton, J., concurring).

The TCPA mandates that once Van Der Linden met her burden to show the applicability of the TCPA to Khan's claim by a preponderance of the evidence, Khan then had to produce clear and specific evidence of each essential element of his claim, including the requisite fault. His affidavits, which insufficiently establish Van Der Linden's fault, do not meet this burden whether the degree of that fault be negligence or reckless disregard. But even if he did meet his burden, Van Der Linden's statements in her affidavit established her affirmative defense of truth by a preponderance of the evidence. Either required the trial court to grant Van Der Linden's motion to dismiss under the explicit provisions of the TCPA.

Accordingly, I concur in the judgment (1) reversing the trial court's order denying Van Der Linden's motion to dismiss Khan's claims for tortious interference with a contract and tortious interference with prospective business relations and (2) remanding those claims to the trial court for an award under section 27.009(a) of court costs, reasonable attorney's fees, and other expenses Van Der Linden incurred in defending herself.[6] But because I believe Khan's claims for defamation per se and defamation also are subject to mandatory dismissal under the TCPA, those claims should be dismissed and remanded to the trial court for a similar award. Because the majority does not do so, I respectfully dissent from that portion of the judgment affirming the trial court's denial.

---

6. The majority's conclusion states that the remand is for "further proceedings"; however, the substance of the majority's opinion makes it clear that these further proceedings regarding Khan's claims for tortious interference with a contract and tortious interference with prospective business relations would be only for an award of court costs, reasonable attorney's fees, and other expenses.