# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00626-CV

**Appellant, Gerard Harrison // Cross-Appellant, Jack D. Maroney**

**v.**

**Appellee, Jack D. Maroney // Cross-Appellee, Gerard Harrison**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-002129, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Gerard Harrison and Jack D. Maroney cross appeal from the trial court's order denying their respective motions to dismiss brought under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–011.[1] For the following reasons, we affirm the trial court's order.

## Background

Maroney's daughter, Margey Harrison (Margey), is married to Harrison. Harrison and Margey lived across the hall from Maroney and his wife on the same floor of the Cambridge Tower Condominiums from 2010 to around August 2016 when the Harrisons moved out of their condominium. In the spring of 2016, a dispute arose between the parties resulting in

---

[1] References to the TCPA in this opinion are to its provisions as they existed prior to the 2019 amendments. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (stating that amendments to TCPA apply "only to an action filed on or after" September 1, 2019).

them becoming estranged. They did not have further contact or communications until Margey filed a separate suit in July 2018 against her parents and others over a partnership dispute (the partnership suit). In her original petition in the partnership suit, Margey alleged that in April 2016 Maroney "began acting hostile and vindictive" toward her and Harrison and that: "In one particularly disturbing episode, Jack Maroney invited Gerard to his garage, then brandished a pistol in his face in a threatening manner."

In their depositions in the partnership suit, Margey and Harrison provided further details about the alleged encounter in the parking garage. Margey testified that she was not present during this alleged encounter and that Harrison told her about it, and she recounted what he told her including that "Daddy just pointed the gun right in his face." Harrison testified that he did not know the date of the encounter but that at Maroney's "invitation":

(i)     Harrison accompanied Maroney from the 13th floor down the elevator to Maroney's car in the parking garage because Maroney told him that he wanted "to show [him] something";

(ii)    Harrison sat in the driver's seat of Maroney's car while Maroney "was standing in the open door at the car" and asked Harrison to open the glove compartment and pick up a pistol from inside the glove compartment;

(iii)   Harrison picked up the pistol;

(iv)    Maroney "took" the pistol from Harrison and held it close to Harrison's face, moving "it in all directions," before Harrison "slowly" took the pistol from Maroney and "put it back in the compartment and closed the door";

(v)     Maroney backed away from the door;

(vi)    Harrison got out of the car;

(vii)   Maroney said, "I'm glad I showed that to you"; and

(viii)  Maroney and Harrison walked back to the elevator and rode it back to the 13th floor in silence.

2

After recounting what happened, Harrison identified the individuals with whom he "shared the story" of this encounter and provided other details about the circumstances surrounding his statements to the identified individuals about what happened.

In the underlying case in this appeal, Maroney sued Harrison for slander based on Harrison's statements to other individuals about the alleged encounter. In his petition, Maroney denied that the encounter had occurred and asserted that Harrison had slandered him "by falsely stating that Maroney pointed a firearm at [Harrison] in a threatening manner, or alternatively that Maroney handled a firearm in a careless and dangerous manner in [Harrison]'s presence." Maroney alleged that Harrison had "personally published a false account of an encounter between Harrison and Maroney to a number of other persons, including Margey, residents of Cambridge Tower Condominium, Harrison's family members, and unrelated construction contractors." He also specifically named the individuals whom Harrison had told about the alleged encounter and provided details about Harrison's statements to them and the circumstances surrounding his statements:

> Harrison told Margey Harrison, Raymond Harrison, Douglas Harrison, Ardon Judd Harrison, Sr., Sallie Sweeney, Sally Ann Harrison, John Fretz, Steve Bresnen, Eric Foran, Ron Padula, Greg Koehler, and Denver Ward that Maroney had Harrison accompany Maroney to the Cambridge Tower garage, sit in the driver's seat [of] Maroney's vehicle, have Harrison retrieve a pistol from the glove compartment, then Maroney retrieving the pistol from Harrison, holding the pistol in front of Harrison's face, moving the pistol in all directions, and Harrison then taking the pistol from Maroney and replacing it in the glove compartment. This is alleged to have occurred in March or April of 2016. . . . Harrison related these claims to Margey in their apartment in April 2016 and related them to his siblings approximately a week later at a restaurant in Carmine, Texas. He related this false tale to John Fretz on the phone approximately two weeks after he told this tale to Margey. Plaintiff does not have any present information on where or when Harrison repeated this slander to Ron Padula, Greg Koehler, or Denver Ward.

3

Maroney also alleged that Margey ended all contact with her parents based on the "false and defamatory statements made about Maroney by Harrison."

Harrison answered and counterclaimed, asserting claims of assault and intentional infliction of emotional distress (IIED) "aris[ing] from Maroney's actions of brandishing a pistol in Harrison's face in a threatening manner" during the alleged encounter. Both of Harrison's counterclaims sought to recover "damages for physical pain resulting from Maroney's conduct" and alleged that Maroney's conduct proximately caused "physical pain resulting from the exacerbation of a stomach disorder."

The parties timely filed their respective TCPA motions to dismiss and responses to each other's motion. In his motion, Maroney contended that the TCPA applied to Harrison's counterclaims of assault and IIED because they were legal actions based on, related to, or in response to Maroney's exercise of his right to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). In his motion, Harrison contended that the TCPA applied to Maroney's slander suit because it was a legal action based on, related to, or in response to Harrison's exercise of his right to free speech and association. *See id.* In their responses to each other's motions, both parties contended that the TCPA did not apply to their own claims. Among their responsive arguments, Harrison argued that his claims were exempt from the TCPA because he was seeking recovery for bodily injury, *see id.* § 27.010(c) (exempting legal action seeking recovery for bodily injury from TCPA), and Maroney challenged the TCPA's constitutionality.

The parties presented evidence, including declarations by the parties and individuals whom Harrison had admitted to telling about the alleged encounter, excerpts from Harrison's and Margey's depositions in the partnership suit, and the original petition in that suit. In his declaration, Maroney declared that he "was extremely surprised" when he heard about

4

Harrison's allegation of the encounter in the parking garage "since no such event had ever occurred" and expressly denied that he invited Harrison to come with him to the garage or that he "exhibit[ed] a pistol to [Harrison]." He further declared that he had never threatened Harrison with a pistol or "held a pistol close to Harrison's face" and that "Harrison's account of such an incident is a lie." In his declaration, Harrison recounted the alleged encounter in the parking garage and admitted that he "did share the event with a few other people." Although he did not "recall whether [he] included each and every detail when he communicated the account," he "did not deviate from the truth as it happened." The other individuals who provided declarations about what Harrison told them about the encounter were Margey, Harrison's siblings and mother, Harrison's best friend, and a resident of Cambridge Towers.

Following a hearing, the trial court denied the parties' respective TCPA motions to dismiss without explanation. These cross appeals followed.

**Analysis**

**Procedure for Dismissal under the TCPA and Standard of Review**

In the TCPA's first step, the party filing a motion to dismiss bears the burden to show by a preponderance of the evidence that the nonmovant's "legal action" is "based on, relates to, or in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* §§ 27.003(a), .005(b); *see Hersh v. Tatum*, 526 S.W.3d 462, 466–68 (Tex. 2017) (describing and applying statutory procedure under TCPA); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898–99 (Tex. 2017) (per curiam) (same). If the movant makes this showing, the trial court must dismiss the action unless the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex.

5

Civ. Prac. & Rem. Code § 27.005(c). Even if the nonmovant satisfies its burden to establish a prima facie case, the trial court still must dismiss the action "if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). In determining whether to dismiss an action, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based" regardless of whether they are formally offered as evidence. Tex. Civ. Prac. & Rem. Code § 27.006(a); *Hersh*, 526 S.W.3d at 467.

"We review de novo whether each party carried its assigned burden." *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.); *see Sloat v. Rathbun*, 513 S.W.3d 500, 503 (Tex. App.—Austin 2015, pet. dism'd) (applying de novo standard of review in TCPA appeal). Under this standard of review, we view the pleadings, affidavits, and other evidence in the light most favorable to the nonmovant. *Sloat*, 513 S.W.3d at 504.

**Harrison's Appeal**

Harrison raises four issues on appeal to challenge the trial court's denial of his motion to dismiss. He argues that the TCPA applies to Maroney's slander claims, that Maroney

6

failed to carry his burden to establish a prima facie case as to the elements of his claims, and that Harrison established the affirmative defenses of truth and qualified privilege by a preponderance of the evidence.

**Applicability of TCPA**

In his first issue, Harrison contends that the TCPA applies to Maroney's slander claims because they are "legal action[s]" based on, related to, or in response to Harrison's exercise of his right of free speech, "specifically, alleged communications relating to a matter of public concern that relates to health, safety, or community well-being."[2]  *See* Tex. Civ. Prac. & Rem. Code §§ 27.001(1) (defining "communication" to include oral statements), (3) defining "exercise of the right of free speech" to mean "communication made in connection with a matter of public concern"), (7) (defining "matter of public concern" to include issue related to "health or safety" or "community well-being"), .003(a); *Coleman*, 512 S.W.3d at 898–901 (discussing plain meaning of phrases "exercise of the right of free speech" and "matter of public concern" as those phrases are defined in TCPA).

Maroney counters that "this type of lawsuit is simply not the kind of action that the TCPA was directed to address, as stated in its purpose clause."[3]  The TCPA's stated purpose is to encourage and safeguard the constitutional rights of persons, including the right to "speak

---

[2]  Harrison also contends that the TCPA applies to Maroney's claims based on Harrison's exercise of the right of association.  *See* Tex. Civ. Prac. & Rem. Code § 27.001(2) (defining "exercise of the right of association").  Because we conclude that Maroney's claims are subject to the TCPA based on Harrison's exercise of the right of free speech, we do not address this alternative ground.  *See* Tex. R. App. P. 47.1, 47.4.

[3]  Because we have concluded that the trial court did not err when it denied the parties' respective motions to dismiss under the TCPA, we do not address Maroney's arguments challenging the constitutionality of the TCPA.  *See* Tex. R. App. P. 47.1, 47.4.

freely," "and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* Tex. Civ. Prac. & Rem. Code § 27.002. Maroney further argues that Harrison's statements to others about the alleged encounter did not involve a matter of public concern because they "were about a private matter occurring in a private space that simply did not involve anyone else—the communications did not involve health or safety or community well[-]being."

The Texas Supreme Court, however, has directed us to "apply a plain-meaning construction of the TCPA definitions' literal language, without regard to the TCPA's broader purposes or background jurisprudence." *Cavin v. Abbott*, 545 S.W.3d 47, 62 (Tex. App.—Austin 2017, no pet.) (*Cavin I*) (citing *Coleman*, 512 S.W.3d at 898–901). The plain language of the statutory definitions does not limit the TCPA's applicability to statements that are made in public and only requires that the substance of the communication, as relevant here, relates to safety or community well-being. *See* Tex. Civ. Prac. & Rem. Code § 27.001(1), (3), (7); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) (noting that TCPA may cover private communications); *Coleman*, 512 S.W.3d at 901 (concluding that TCPA applied to private communications that related to "safety" concerns); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam) (explaining that, in context of exercise of right of free speech, TCPA's plain language "merely limits its scope to communications involving a public subject—not communications in public"); *Cavin I,* 545 S.W.3d at 61 (observing that plain language imposes no requirement that communication be made in public).

In *Cavin I*, we concluded that a daughter's claims against her parents that were based on "communications concern[ing] a 'private' family dispute and conduct that was

8

actionable as 'private torts'" were subject to the TCPA. 545 S.W.3d at 61. In reaching our conclusion, we noted the absence of limiting language in the statutory definitions and observed that "[t]he TCPA has prescribed a specific definition of 'matter of public concern' requiring, as applicable to this case, only that 'an issue relat[e] to . . . health or safety,' without further elaboration or qualification." *Id.* (citing Tex. Civ. Prac. & Rem. Code §27.001(7)); *see also Campone v. Kline*, No. 03-16-00854-CV, 2018 Tex. App. LEXIS 6032, at *21–22 (Tex. App.—Austin Aug. 2, 2018, no pet.) (mem. op.) (collecting cases in which TCPA applied because alleged statements were made in connection with "matter of public concern").

Applying the plain language of the statutory definitions, we similarly conclude that Harrison's statements to the identified individuals about the alleged encounter in the parking garage were communications made regarding a matter of public concern—they related to issues of safety or community well-being. *See* Tex. Civ. Prac. & Rem. Code § 27.001(3), (7); *Cavin I*, 545 S.W.3d at 61. Thus, Harrison demonstrated the TCPA's applicability to Maroney's slander claims that are based on those statements. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). We sustain Harrison's first issue.

**Prima Facie Case**

Because Harrison demonstrated the TCPA's applicability to Maroney's slander claims, the burden shifted to Maroney to establish a prima facie case for each essential element of his claims. *See id.* § 27.005(c). In his second issue, Harrison argues that Maroney failed to carry this burden.

Slander is a type of defamation: a "defamatory statement expressed orally." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). The elements of a

9

defamation action involving a plaintiff who is a private individual, as is the case here, are: (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with negligence; and (4) damages. *In re Lipsky*, 460 S.W.3d at 593. A party is negligent in making a defamatory statement when he knew or should have known that it was false. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Further, if the statement is defamatory per se, the plaintiff need not plead and prove damages. *In re Lipsky*, 460 S.W.3d at 593. "Defamation per se refers to statements that are so obviously harmful that general damages may be presumed." *Id.*; *see Dallas Morning News*, 554 S.W.3d at 624 (discussing difference between defamation per se and per quod); *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013) (discussing rationale behind presuming harm in defamation per se cases). Whether a statement qualifies as defamatory per se is generally a question of law. *In re Lipsky*, 460 S.W.3d at 596; *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied).

In our review of the trial court's decision to deny Harrison's motion to dismiss, we view the pleadings, affidavits, and other evidence in the light most favorable to Maroney. *See Sloat*, 513 S.W.3d at 504. Under this standard, we conclude that Maroney established by clear and specific evidence a prima facie case for each essential element of his slander claims. *See* Tex. Civ. Prac. & Rem. Code §§ 27.005(c), .006(a); *In re Lipsky*, 460 S.W.3d at 590 (explaining that prima facie case is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true"). Evidence showed that Harrison told the identified individuals that Maroney "brandished a pistol" in Harrison's face "in a threatening manner" during the alleged encounter and that Harrison's statements were false. *See In re Lipsky*, 460 S.W.3d at 593; *see also Dallas Morning News*, 554 S.W.3d at 623 (stating that

10

threshold requirement for defamation claim is publication of false statement to third party).  In his affidavit and pleadings, Maroney denied that the encounter occurred or that he had ever threatened Harrison with a firearm.  Crediting this evidence, Harrison—as one of the two participants in the alleged encounter—would have known that his statements were false when he made them.  *See WFAA-TV*, 978 S.W.2d at 571 (explaining that party is negligent in making defamatory statement when he knew or should have known that statement was false); *Van Der Linden v. Khan*, 535 S.W.3d 179, 198, 201 (Tex. App.—Fort Worth 2017, pet. denied) (observing that party "could hardly offer more to refute" claim when party was one of two involved and, because parties knew whether assertion was true, evidence showing that party's assertion was false "would also logically and necessarily prove that [party] knew that her assertion was false").

Harrison argues that his statements about the alleged encounter were not slanderous based on Maroney's characterization of those statements.  In arguing that Harrison cannot establish a prima facie case of assault, Maroney characterizes Harrison's statements of the alleged encounter as Maroney "[s]howing a family member a firearm."  But Maroney's arguments in defense of Harrison's assault claim do not preclude his allegations as to his slander claims under the TCPA.  *See Hersh*, 526 S.W.3d at 467 (explaining that basis of legal action under TCPA is not determined by defendant's admissions or denials but by plaintiff's allegations).  We further conclude that Maroney did not need to present prima facie evidence of damages because evidence showed that Harrison's statements about Maroney threatening him with a firearm were "obviously detrimental to [Maroney]'s good name."  *See Dallas Morning News*, 554 S.W.3d at 624; *see also* Tex. Penal Code § 22.01(a)(2) (stating person commits assault if person "intentionally or knowingly threatens another with imminent bodily injury");

11

*In re Lipsky*, 460 S.W.3d at 596 (observing that "[a]ccusing someone of a crime" is example of defamation per se).

Harrison further argues that Maroney "was required to present—for each alleged publication—clear and specific evidence of when, where, and what was said, the defamatory nature of the statements, and how they damaged Maroney," and that Maroney failed to do so as to at least four of his slander claims. *See In re Lipsky*, 460 S.W.3d at 591 (stating that "evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements," and how plaintiff was damaged should be sufficient to resist TCPA motion); *Texas Disposal Sys. Landfill*, 219 S.W.3d at 587 ("Texas law treats each alleged defamatory publication as a single transaction with an independent injury."). Harrison argues that Maroney did not establish the date, time, location and "actual words" that Harrison used in recounting the alleged encounter to at least some of the named individuals and that Maroney was required to set out in his pleadings "the actual words allegedly published by Harrison with which he takes issue."[4] Harrison further cites the inconsistencies in the declarations from named individuals

---

[4] To the extent that Harrison relies on cases involving libel as support for his argument that Maroney was required to include a verbatim recitation of Harrison's statements to each individual named in Maroney's pleadings, we do not find those cases inconsistent with our analysis of Maroney's slander claims. *See, e.g.*, *Kahn v. Beicker Eng'g, Inc.*, No. 04-94-00823-CV, 1995 WL 612402, at *2 (Tex. App.—San Antonio Oct. 18, 1995, writ denied) (not designated for publication) (affirming special exception to libel claim asserting that pleading failed to identify defamatory words employed and explaining that, in action for libel, "petition must set out the particular defamatory words or at least their substance and meaning"); *Rio Grande Valley Gas Co. v. Caskey*, 33 S.W.2d 848, 849–50 (Tex. App.—San Antonio 1930, no writ) (stating that for libel claim, "[i]t is always necessary to set out in the petition the portions of a writing upon which a libel is based").

In supplemental briefing, Harrison cites *Patel v. Patel*, No. 14-18-00771-CV, 2020 Tex. App. LEXIS 3749, at *21–22 (Tex. App.—Houston [14th Dist.] May 5, 2020, no pet.) (mem. op.), as support for his argument that Maroney was required to establish the facts of "when, where, and what was said." In that case, however, the nonmovant "presented no evidence of

12

about what Harrison told them about the alleged encounter and the lack of evidence from some of the other individuals about what Harrison told them.

Although Maroney's live pleading does not specifically identify the exact "when" and "where" Harrison recounted the alleged encounter to each of the twelve individuals named in Maroney's petition, it details the substance of Harrison's statements to them, and Maroney was not required to establish a prima facie case of damages as to each named individual based on the evidence that Harrison's statements were defamatory per se. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) (requiring court to consider pleadings among evidence supporting or opposing motion to dismiss); *In re Lipsky*, 460 S.W.3d at 593 (stating that plaintiff need not plead and prove damages when statement is defamatory per se). Further, in his deposition, Harrison recounted what happened during the alleged encounter, then specifically identified the individuals with whom he "shared the story," and provided other details about the circumstances surrounding his statements to the named individuals.[5] In his declaration, Harrison could not recall whether he "included each and every detail" each time he recounted what happened during the alleged encounter, but he declared that he "did not deviate from the truth as it happened." *See In re Lipsky*, 460 S.W.3d at 591 (explaining that "plaintiff must provide enough detail to show the factual basis for its claim" and that TCPA "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence").

_____

statements published to third parties" in contrast with the undisputed fact here that Harrison "shared the story" of the alleged encounter with identified individuals.

[5] As to the unrelated individuals at Cambridge Towers, when asked "how it came up in a conversation as to whether or not [he] had been threatened with a gun," Harrison testified in his deposition that he "did not seek out nor look for people to tell and—it came up somehow with those individuals."

Viewing the pleadings and other evidence in the light most favorable to Maroney, we conclude that it was sufficient to satisfy Maroney's burden to establish a prima facie case as to each essential element of his slander claims. *See id.* (explaining that prima facie case is "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true"); *Sloat*, 513 S.W.3d at 504. We overrule Harrison's second issue.

**Defenses of Substantial Truth and Qualified Privilege**

In his third and fourth issues, Harrison argues that, even if Maroney established a prima facie case, Maroney's suit still must be dismissed because Harrison established by a preponderance of the evidence the defenses of substantial truth and qualified privilege. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d) (requiring trial court to dismiss action "if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim"). "[T]ruth is generally a defense to defamation." *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441 (Tex. 2017) (discussing defense of truth in context of TCPA motion to dismiss). Qualified privilege also is a defense to defamation, but the defense is defeated with proof that the speaker knew that his defamatory statement was false. *See Campone*, 2018 Tex. App. LEXIS 6032, at *28–29 (discussing defense of qualified privilege in context of TCPA motion to dismiss, explaining that it "justifies a communication made without actual malice," and that party seeking to defeat assertion of privilege "must prove that the speaker knew that the statement was false or acted with reckless disregard for its truth"); *see also Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000) (explaining that "actual malice" in defamation cases is "term of art" and that defendant makes defamatory statement with

14

actual malice when he makes it "with knowledge that it was false or with reckless disregard of whether it was true or not").

Contending that he established his defenses by a preponderance of the evidence, Harrison cites his evidence about the alleged encounter, the Harrisons' subsequent move away from their condominium shortly after the alleged encounter occurred, and the costs that the Harrisons incurred by having to move. However, in analyzing defamation claims under the TCPA, the Texas Supreme Court has explained that "on matters of public concern, the plaintiff bears the burden to prove falsity, and the affirmative defense of truth does not come into play." *Van Der Linden*, 535 S.W.3d at 200 (citing *D Magazine Partners*, 529 S.W.3d at 441); *see id.* at 198–200 (concluding that contrary evidence of truth cannot be used under TCPA to defeat nonmovant's defamation claim involving matter of public concern when nonmovant has met burden to establish prima facie case "for falsity"). The plaintiff also has the burden to prove falsity to defeat the defense of qualified privilege as to the plaintiff's defamation claims. *See Campone*, 2018 Tex. App. LEXIS 6032, at *28–29.

Viewing the pleadings and evidence in the light most favorable to Maroney, we have concluded that he satisfied his burden to present a prima facie case that Harrison's statements to the identified individuals about the alleged encounter were false. In this context, it follows that the defenses of substantial truth and qualified privilege did not satisfy Harrison's burden under the TCPA to establish a defense to Maroney's claims. *See id.*; *Van Der Linden*, 535 S.W.3d at 200; *see also* Tex. Civ. Prac. & Rem. Code § 27.005(d). Thus, we overrule Harrison's third and fourth issues.

Because we have concluded that Maroney satisfied his burden to establish a prima facie case as to the essential elements of his slander claims and Harrison did not satisfy his

15

burden to establish a defense to those claims, we conclude that the trial court did not err in denying Harrison's TCPA motion to dismiss.

**Maroney's Cross Appeal**

Raising three issues on cross appeal, Maroney challenges the trial court's denial of his motion to dismiss Harrison's counterclaims of assault and IIED. Maroney argues that the TCPA applies to Harrison's counterclaims, that Harrison failed to carry his burden to establish a prima facie case as to the elements of those claims, and that Maroney established an affirmative defense to those claims. We limit our review to Maroney's first issue because it is dispositive of his cross appeal. *See* Tex. R. App. P. 47.1, 47.4. In this issue, Maroney asserts that the TCPA applies to Harrison's counterclaims because they are "based on, relate to, or in response to" Maroney's exercise of his right to petition—the filing of his suit against Harrison. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001(4)(a)(i) (recognizing that "[e]xercise of the right to petition" includes "a communication in or pertaining to" "a judicial proceeding"), .003; *Cavin I*, 545 S.W.3d at 64 (noting that filing lawsuit is exercise of right to petition under TCPA).

"Intertwined with and overlying [the] multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application." *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.). When an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action. *See* Tex. Civ. Prac. & Rem. Code § 27.010 (stating certain types of legal actions that are exempt from TCPA); *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that if TCPA exemption applies, movant cannot invoke TCPA's protections).

16

Harrison's arguments in response to the TCPA's applicability to his claims included that his claims were exempt from the TCPA because he sought "recovery for bodily injury" under both theories of recovery. *See* Tex. Civ. Prac. & Rem. Code § 27.010(c) (exempting "legal action seeking recovery for bodily injury"). In his pleadings, Harrison seeks "damages for physical pain resulting from Maroney's conduct," and he alleges that Maroney's allegedly wrongful conduct during the encounter proximately caused "physical pain resulting from the exacerbation of a stomach disorder." In his declarations, he also addressed the worsening of his "stomach disorder" and "increased physical pain" as a result of the alleged encounter.

Maroney argues that this exemption does not apply because "'[p]ersonal injury' denotes damage or harm to the physical structure of the body" and characterizes Harrison's allegations of physical pain as complaining of "heartburn." This Court, however, must apply the plain language of the statute. *See Coleman*, 512 S.W.3d at 901. The exemption's plain language does not require harm to the body's "physical structure" for the exemption to apply. *See* Tex. Civ. Prac. & Rem. Code § 27.010(c); *Cavin I*, 545 S.W.3d at 57 (concluding that assault claim seeking recovery for injuries for "physical damage and compensation for physical pain" was within exemption); *see also Forbes v. Lanzl*, 9 S.W.3d 895, 900 (Tex. App.—Austin 2000, pet. denied) ("'Bodily injury' means 'physical pain, illness, or any impairment of physical condition.'" (quoting Tex. Penal Code § 1.07(a)(8))).

Further, the "TCPA does not make the 'bodily injury' exemption contingent on a threshold showing of merit or 'clear and specific evidence.'" *Cavin I*, 545 S.W.3d at 58; *see Superior HealthPlan, Inc. v. Badawo*, No. 03-18-00691-CV, 2019 Tex. App. LEXIS 6835, at *10 (Tex. App.—Austin Aug. 8, 2019, no pet.) (mem. op.) (concluding that claimant carried

17

burden to demonstrate that her claims fell within bodily injury exemption where live petition asserted claims seeking recovery for "'brain damage and ongoing pain, suffering, [and] disability'"). The exemption also "does not distinguish based on the type of claim asserted." *Badawo*, 2019 Tex. App. LEXIS 6835, at *9; *see Cavin v. Abbott*, 613 S.W.3d 168, 172 (Tex. App.—Austin 2020, pet. filed) (*Cavin II*) (concluding that TCPA did not apply to claim seeking injunctive relief based on bodily injury exemption).

On this record, we conclude that Maroney cannot invoke the protections of the TCPA because, even if we assume without deciding that Harrison's claims are related to Maroney's exercise of his right to petition, the claims fall within the bodily injury exemption because Harrison seeks damages for physical pain based on Maroney's alleged conduct under both theories of recovery. *See Harper*, 562 S.W.3d at 11; *Cavin I*, 545 S.W.3d at 58. Thus, we conclude that the TCPA does not apply to Harrison's claims and that the trial court did not err in denying Maroney's motion to dismiss. We overrule Maroney's first issue and, because this issue is dispositive of his cross appeal, we do not further address his other issues. *See* Tex. R. App. P. 47.1, 47.4.

## Conclusion

Having concluded that the trial court did not err in denying the parties' respective TCPA motions to dismiss, we affirm the trial court's order.

18

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   August 12, 2021