**Affirmed and Opinion filed April 28, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00724-CV

---

## PATRIOT CONTRACTING, LLC AND STEPHEN J. FRIEDMAN, Appellants

### V.

## MID-MAIN PROPERTIES, LP, Appellee

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-19892**

---

## O P I N I O N

Patriot Contracting, LLC and Stephen J. Friedman appeal the trial court's order denying their motion to dismiss under the Texas Citizens Participation Act ("TCPA"), as well as the court's finding that the motion was frivolous and intended solely for delay. The trial court determined among other things that the motion was untimely, and the primary issue in this appeal is whether factual allegations in appellee's amended counterclaim triggered a new sixty-day deadline to file the

motion. We hold that the trial court did not err in concluding that appellants' motion was untimely because appellee's eighth amended counterclaim did not allege new essential facts and therefore did not trigger a new sixty-day deadline in which to file the motion. We also conclude that the trial court did not abuse its discretion in finding that the motion was frivolous.

We affirm.

## Background

Appellee Mid-Main Properties, LP is a commercial property developer. In 2014, Mid-Main hired appellant Patriot Contracting, LLC as the general contractor for a construction project in the Houston Midtown area. Appellant Stephen J. Friedman owns Patriot.

The project involved constructing four residential apartment towers above a common parking garage with retail space at ground level. Construction began in late 2014. According to Mid-Main, over the next two and one-half years, Patriot and its subcontractors performed defective work that caused significant damage and delay. Patriot also allegedly demanded excess payments from Mid-Main because Patriot had difficulty paying its subcontractors. Mid-Main claims that Patriot abandoned the project twice in April 2017, and Mid-Main terminated the contract after Patriot's second abandonment.

During the project, Patriot submitted pay applications, which sought retainage amounts and represented that Patriot had paid its subcontractors amounts due. According to Mid-Main, however, Patriot did not substantially complete the work for which it sought payment and did not obtain unconditional releases and lien waivers from its subcontractors—both preconditions to earning the retainage. Based on Mid-Main's alleged failure to pay the amounts requested in the applications,

2

Patriot recorded a mechanic's lien against the project in May 2017. Patriot's lien put Mid-Main at risk of defaulting on its construction loan. Mid-Main claims that Friedman repeatedly contacted Mid-Main's construction lender in an unsuccessful attempt to buy Mid-Main's loan and acquire the project at a significant discount.

Eventually, Mid-Main made its own arrangements with subcontractors to finish construction through "restart agreements." According to Mid-Main, Friedman told subcontractors not to return to the project and advised them to demand retainage from Mid-Main in exchange for entering a restart agreement, even though Mid-Main had paid some retainage to Patriot previously. Because of Friedman's and Patriot's actions, Mid-Main contends it made duplicative retainage payments to subcontractors to resume construction. Nonetheless, the project construction was completed in February 2018.

Patriot sued one of its subcontractors in March 2017 and later added Mid-Main as a defendant. On June 16, 2017, Mid-Main filed a counterclaim against Patriot, in which Mid-Main asserted claims for common law fraud related to the allegedly false pay applications and for a declaratory judgment that Patriot's lien was void.[1] Mid-Main amended its counterclaim several times, adding and deleting claims over time. The key pleadings for our purposes are Mid-Main's Seventh and Eighth Amended Counterclaims. Mid-Main filed its Seventh Amended Counterclaim on December 20, 2019. In that pleading, Mid-Main asserted the following claims: (1) breach of contract; (2) breach of warranty; (3) negligence; (4) negligent misrepresentation; (5) fraud; (6) personal liability of Friedman under Texas Property Code section 53.085 for signing false affidavits supporting the disputed pay applications; (7) breach of surety bonds; (8) declaratory judgment;

---

[1] The underlying lawsuit also involves subcontractors and Patriot's surety, Travelers, but claims related to these parties are not at issue.

(9) Friedman tortiously interfered with Mid-Main's prospective relations by interfering with Mid-Main's efforts to obtain additional financing for the project; and (10) Patriot and Friedman tortiously interfered with Mid-Main's restart agreements with subcontractors after Patriot abandoned the project.[2]

Trial was scheduled to begin in early September 2020. Patriot requested an emergency continuance in August, seeking to continue trial until January 2021. The trial court granted the continuance in part, setting the case for trial on November 2, 2020.

On September 2, in anticipation of trial, Mid-Main filed its Eighth Amended Counterclaim. In that document, Mid-Main did not add any new claims, and it deleted two claims. Mid-Main, however, modified certain assertions in the "factual background" section, which we discuss in detail below.

Patriot filed another emergency motion for continuance on October 5, which the court denied. On October 9, however, the trial court granted another party's continuance motion and reset trial for November 30, 2020, with pre-trial to occur November 18.

The following week, on October 14, Patriot and Friedman filed a "Motion to Dismiss, for Discovery Stay, and Stay of Trial Pursuant to the [TCPA]." A motion to dismiss a legal action under the TCPA must be filed not later than the sixtieth day after the date the legal action is served.[3] Although Patriot and Friedman had not filed a TCPA motion to dismiss any of Mid-Main's prior counterclaims, they

---

[2] Friedman's alleged personal liability under Property Code section 53.085 and alleged tortious interference with Mid-Main's prospective relationships first appeared in Mid-Main's Fourth Amended Counterclaim filed March 22, 2019.

[3] *See* Tex. Civ. Prac. & Rem. Code § 27.003(b). Appellants filed their motion to dismiss within sixty days of service of Mid-Main's Eighth Amended Counterclaim.

contended their motion was timely as to the Eighth Amended Counterclaim because that pleading alleged new claims and new wrongful acts. Patriot and Friedman contended that Mid-Main's Eighth Amended Counterclaim contained "new allegations as to tortious interference, false pay applications, and fraudulent lien," all of which were based on and in response to Friedman's protected free speech and petition rights and thus should be dismissed. Due to the new alleged claims and acts, appellants asserted that the "TCPA clock was reset."

Mid-Main responded to the TCPA motion to dismiss with three arguments: (1) the motion was untimely; (2) assuming the motion was timely, the challenged claims are not covered by the TCPA; and (3) further assuming the claims are covered by the TCPA, Mid-Main could establish a prima facie case for each challenged cause of action. Among other exhibits attached to its response, Mid-Main submitted a "redline" version of its Eighth Amended Counterclaim showing the changes made to its Seventh Amended Counterclaim. According to Mid-Main, "[t]he content of the fraud, declaratory judgment, tortious interference, and Section 53.085 claim paragraphs is identical to what Mid-Main filed in 2019." Mid-Main asserted that it had not alleged any new "essential facts" necessary to "reset" the "TCPA clock" and that "Patriot and Friedman are incapable of pointing to a single substantive difference between the causes of action the parties have been litigating for three years and the pleading filed in September 2020."

The trial court denied appellants' motion to dismiss. In its order, the trial court found the following:

1. The Motion was untimely. Patriot and Friedman did not comply with the statutory requirement to file their motion "not later than the 60th day after the date of service of the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(b).

5

2. The Motion requested dismissal of a cause of action that the plain text of the statute clearly exempts from dismissal pursuant to Tex. Civ. Prac. & Rem. Code § 27.010(a)(12), and there is no good faith argument for the extension, modification, or reversal of existing law.

3. The Motion requested dismissal of causes of action not covered by the plain text of Tex. Civ. Prac. & Rem. Code §§ 27.001, 27.003, and there is no good faith argument for the extension, modification, or reversal of existing law.

4. The Motion requested dismissal of claims subject to prior motions for no-evidence summary judgment that have been denied.

5. [Struck]

6. [Struck]

7. The Motion was frivolous for the reasons stated above.

8. The Motion filed was solely intended to delay this case, which is assigned for trial beginning November 30, 2020.

Based on these findings, the trial court ordered that, under section 27.009(b), Mid-Main recover its costs and reasonable attorney's fees incurred in responding to the motion in an amount to be determined later.

Patriot and Friedman timely noticed an interlocutory appeal, which stayed proceedings in the trial court. *See* Tex. Civ. Prac. & Rem. Code §§ 27.003; 27.005; 51.014(a)(12), (b).

## TCPA Motion to Dismiss

### A. Relevant Law and Standard of Review

The TCPA contemplates an expedited dismissal procedure applicable to claims brought to intimidate or silence a defendant's exercise of the rights to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law without impairing a person's right to file meritorious lawsuits for demonstrable injury. *See* Tex. Civ. Prac. & Rem. Code § 27.002; *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132

6

(Tex. 2019); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). Among its many balancing measures, the act imposes a deadline for seeking dismissal of actions within the statute's purview. Absent an extension, a dismissal motion must be filed "not later than the 60th day after the date of service of the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(b). The current version of the TCPA defines a "legal action" to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). We review de novo the trial court's ruling on a TCPA motion to dismiss. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Among their appellate issues, Patriot and Friedman challenge the trial court's finding that their motion to dismiss was untimely. If we agree the motion was untimely, we need not consider appellants' other arguments because a trial court does not err in denying an untimely filed TCPA motion, even a meritorious one. *See, e.g.*, *Petrobras Am., Inc. v. Astra Oil Trading NV*, 633 S.W.3d 606, 637-40 (Tex. App.—Houston [14th Dist.] 2020, pet. granted); *Bacharach v. Garcia*, 485 S.W.3d 600, 602-03 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The issue in this case is whether Mid-Main's Eighth Amended Counterclaim asserted a new "legal action" to which the TCPA's sixty-day deadline had not already applied. We conclude it did not, and therefore the Eighth Amended Counterclaim did not trigger a new TCPA deadline.

**B.     Whether Appellants' TCPA Motion to Dismiss was Timely**

During the pendency of this appeal, the Supreme Court of Texas issued two opinions that govern the timeliness issue in today's case. *See Montelongo v. Abrea*,

622 S.W.3d 290 (Tex. 2021); *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835 (Tex. 2021). In *Montelongo*, the supreme court held that:

> an amended or supplemental pleading that asserts the same legal claims or theories by and against the same parties and based on the same essential facts alleged in a prior pleading asserts the same "legal action" to which the sixty-day period previously applied and thus does not trigger a new sixty-day period for filing a dismissal motion. But to the extent an amended or supplemental pleading either (1) adds a new party or parties, (2) alleges new essential facts to support previously asserted claims, or (3) asserts new legal claims or theories involving different elements than the claims or theories previously asserted, the new pleading asserts a new legal action and triggers a new sixty-day period as to those new parties, facts, or claims.

*Montelongo*, 622 S.W.3d at 293-94; *see Kinder Morgan*, 622 S.W.3d at 848. Thus, "an amended or supplemental petition that adds new parties or new essential factual allegations . . . assert[s] a new legal action and starts a new sixty-day period as to the new parties and the claims based on the new factual allegations." *Montelongo*, 622 S.W.3d at 299; *see Kinder Morgan*, 622 S.W.3d at 849. But an amended pleading raising the same claims against the same parties and based on the same essential facts does not trigger a new sixty-day period for filing a dismissal motion. *Montelongo*, 622 S.W.3d at 298. Such a pleading "merely reasserts the *same* legal action to which the deadline has already applied." *Id.* (emphasis in original). This is so because construing the TCPA to grant a new deadline for legal actions that have been previously served "would render the Act's deadline meaningless." *Id.*

Patriot and Friedman contend that Mid-Main's Eighth Amended Counterclaim triggered a new sixty-day deadline, and thus their TCPA motion to dismiss was timely, for two reasons: first, any pleading amendment resets the TCPA's sixty-day deadline; and second, Mid-Main's Eighth Amended Counterclaim asserted new essential factual allegations.

8

The supreme court has rejected appellants' first argument,[4] as have all Texas intermediate appellate courts considering the question, including ours.[5] "Construing the [TCPA] to permit a defendant to file a dismissal motion after the claimant files a new pleading asserting the same claims by and against the same parties and based on the same essential facts would negate the sixty-day deadline completely." *Montelongo*, 622 S.W.3d at 298.[6]

---

[4] *Montelongo*, 622 S.W.3d at 298.

[5] *See, e.g.*, *In re C.T.H.*, 617 S.W.3d 57, 61-62 (Tex. App.—Dallas 2020, no pet.) (holding renewed request for injunctive relief did not start new sixty-day period because the "request for injunctive relief was essentially unchanged" compared to the original pleading containing the request); *Borderline Mgmt., LLC v. Ruff*, No. 11-19-00152-CV, 2020 WL 1061485, at *7-8 (Tex. App.—Eastland Mar. 5, 2020, pet. denied) (mem. op.) (holding amended petition did not start new sixty-day period because its "factual allegations . . . essentially remain[ed] the same," and it did not allege a "new claim" or make "substantively new factual allegations that changed the essential nature of the claims"); *TV Azteca, S.A.B. de C.V. v. Trevino Ruiz*, 611 S.W.3d 24, 31 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) (holding amended petition that added "additional information" to fourteen previously alleged defamatory statements did not assert "new factual allegations so as to restart the clock on appellants' TCPA motion to dismiss deadline"); *Mancilla v. Taxfree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) (holding amended petition asserting new claims based on new factual allegations did not trigger new sixty-day period because the new factual allegations did not change "the essential nature" of the action); *Bacharach v. Garcia*, 485 S.W.3d 600, 602-03 & n.3 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding amended petition asserting no new claims did not trigger new sixty-day period but expressing no opinion on whether assertion of new causes of action would have triggered new sixty-day period); *Paulsen v. Yarrell*, 455 S.W.3d 192, 197-98 (Tex. App.—Houston [1st Dist.] 2014, no pet.), *superseded by statute on other grounds as stated in Jordan v. Hall*, 510 S.W.3d 194, 198-99 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding supplemental pleading that did not add new parties or claims and relied on the "same essential factual allegations" as original petition did not start new sixty-day period); *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 193-94 (Tex. App.—El Paso 2014, no pet.) (holding second amended petition asserting same claims and facts against same defendant named in first amended petition did not trigger new sixty-day period for defendant); *In re Est. of Check*, 438 S.W.3d 829, 837 (Tex. App.—San Antonio 2014, no pet.) (holding amended counterpetition that did not add new claims or parties provided "neither a basis nor a compelling reason to reset the original sixty-day deadline").

[6] We presume appellants preserved their first argument in the trial court, although in their reply to Mid-Main's response to the TCPA motion appellants acknowledged that not all pleading amendments "restart" the TCPA clock.

9

Appellants' second argument seeks to apply the reasoning of *Montelongo* and *Kinder Morgan*. According to appellants, Mid-Main's Eighth Amended Counterclaim asserted new essential facts as to some previously asserted claims and thus triggered a new sixty-day deadline as to those new facts. Appellants direct us to three specific sections of the Eighth Amended Counterclaim.

1. "Continues to the present" argument

The first section on which appellants rely concerns factual allegations ostensibly in support of Mid-Main's tortious interference claim relating to its efforts to refinance the project. Appellants highlight the following language contained in the Seventh Amended Counterclaim:

> Patriot filed a multi-million dollar lien against the Project in an attempt to put Mid-Main in default of the construction loan, and then Stephen Friedman, in his personal capacity, contacted the construction lender repeatedly to try to buy the promissory note Mid-Main had given to the bank. This scheme is more than a mere breach of contract. It was a nefarious scheme to wrongfully try to obtain a hundred-million-dollar project for about fifty million dollars by putting the Project into severe financial distress. At the same time, Stephen Friedman contacted various investors, partners, and others that owned or had an interest in Mid-Main and disparaged, criticized, denigrated, and belittled various individuals involved in the leadership of Mid-Main and the construction of the Project in an effort to sow discord among the partners. Notably, *this effort continues to the present*, with Stephen Friedman routinely calling and emailing various people associated with Mid-Main in order to insult Robert Schultz, Mid-Main, and its attorneys, as Mr. Friedman continued to try to take control of the Project and Mid-Main itself by acquiring the note. Mr. Friedman's harassment of Mid-Main, its investors, its representatives, its employees, its coun[s]el as well as others associated with the Project, including but not limited to subcontractors, was part of his campaign to intentionally delay the project. (Emphasis added)

Save for one spelling error, Mid-Main did not change the above factual allegations when it filed its Eighth Amended Counterclaim. Except for the final sentence, the same allegations have appeared in each amended version of Mid-Main's preceding counterclaims beginning with its Fourth Amended Counterclaim filed in March 2019, in which Mid-Main first asserted its claim that Friedman tortiously interfered with its refinancing efforts.

Appellants do not contend that Mid-Main's Eighth Amended Counterclaim adds new parties or asserts new claims. In the absence of new parties or new claims, an amended legal action must allege new essential facts to trigger a new sixty-day deadline to file a TCPA motion to dismiss. *See Montelongo*, 622 S.W.3d at 293-94; *Kinder Morgan*, 622 S.W.3d at 838.[7] The part of Mid-Main's Eighth Amended Counterclaim at issue, however, does not affirmatively allege any new facts. The allegations that Friedman "contacted various investors, partners, and others that owned or had an interest in Mid-Main" and disparaged or criticized Mid-Main's leadership in an effort to take control of the project, as alleged in the Eighth Amended Counterclaim, are identical to the allegations contained in Mid-Main's Fourth through Seventh Amended Counterclaims. Thus, appellants had fair notice of this tortious interference counterclaim—and the essential facts alleged to support it—since March 2019. Mid-Main's Eighth Amended Counterclaim did not affirmatively assert any new statements or wrongful conduct by Friedman occurring since December 2019.

Acknowledging that the quoted text does not explicitly add new factual allegations, appellants nonetheless argue that the pleading asserts new essential facts in support of the tortious interference with refinancing claim because it repeats the

---

[7] *See supra* note 5.

11

assertion that Friedman's wrongful conduct "continues to the present." Because the Eighth Amended Counterclaim was filed eight months after the Seventh Amended Counterclaim, appellants claim the quoted allegations, though facially unmodified, assert that the same conduct alleged to have occurred at unspecified times before December 2019 occurred again between December 2019 and September 2, 2020. To appellants, this represents an allegation of ongoing wrongful acts that could not have supported the claims asserted in Mid-Main's Seventh Amended Counterclaim. As they say, "the Eighth Counterclaim necessarily alleges distinct communications and acts occurring and causing harm in a time period not mentioned in a prior pleading." Key to the argument, appellants rely on the proposition that each tortious communication gives rise to a new and distinct injury. *See TV Azteca*, 611 S.W.3d at 29 (quoting *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied) ("Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise.")).

Construing the Eighth Amended Counterclaim to allege that Friedman made new tortious communications after December 2019 that were not alleged in a prior pleading would require one to infer that such communications occurred based only on the "continues to the present" language (which has been alleged since this claim was first made), coupled with the date of the pleading's filing. Appellants' proposition that new essential facts sufficient to trigger a new sixty-day deadline may appear by implication in an amended or supplemental pleading is a matter not addressed in *Montelongo*, *Kinder Morgan*, or any other case appellants have brought to our attention. Presuming without deciding that new facts merely implicit in an amended legal action may qualify as new essential facts sufficient to trigger a new deadline, we do not agree that the new essential facts appellants contend exist in the Eighth Amended Counterclaim are necessarily present by implication. Mid-Main's

"continues to the present" allegation is nothing more than a contention that appellants have continued to engage in the same general type of wrongful conduct of which appellants have long had fair notice. It is the same claim re-alleged repeatedly in multiple amended legal actions over eighteen months. *See Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353, at *8 (Tex. App.—Dallas Feb. 11, 2022, no pet. h.) (mem. op.) (concluding amended pleading did not allege new essential facts when party re-alleged essentially same claim over two years); *Petrobras*, 633 S.W.3d at 639-40.

Further still, assuming that the "continues to the present" allegation necessarily implies that Friedman made a new statement, it is nonetheless simply an allegation in the same nature as previously alleged that would support the same theory and recovery, and therefore is insufficient to trigger a new sixty-day TCPA deadline. *See Jetall Cos., Inc. v. JPG Waco Heritage LLC*, 637 S.W.3d 865, 870 (Tex. App.—Waco 2021, pet. filed) (concluding "reference to additional notices of lis pendens did not, and could not, change the nature or amount of the remedy and is simply an allegation of facts of the same nature as previously alleged that would support the same theory and amount of recovery"). In *Petrobras*, this court said that a new legal action alleging additional facts concerning the parties' "most recent communications" was nonetheless insufficient to trigger a new sixty-day deadline because the "substantive allegation underlying their motions was the same as their previous filings." *Petrobras*, 633 S.W.3d at 639-40.

Numerous courts have stated—both before and after *Montelongo* and *Kinder Morgan*—that the filing of an amended pleading that does not alter the "essential nature" of an action does not restart the deadline. *See, e.g.*, *Jetall Cos.*, 637 S.W.3d at 869; *Borderline Mgmt., LLC*, 2020 WL 1061485, at *7-8 (holding that an amended petition did not start a new sixty-day period because its "factual allegations

13

. . . essentially remain[ed] the same," and it did not allege a "new claim" or make "substantively new factual allegations that changed the essential nature of the claims"); *Mancilla*, 2018 WL 6850951, at *3 ("[T]he filing of an amended pleading that does not alter the essential nature of an action does not restart the deadline."); *see also In re C.T.H.*, 617 S.W.3d at 61-62 (when mother's request for injunctive relief remained essentially unchanged and did not add new factual allegations in amended pleading, TCPA deadline was not reset).  We agree, and the same is true here.  Even inferring from the Eighth Amended Counterclaim that Friedman made an additional tortious statement after December 2019, there is no allegation or implication that the statement is any different in content or effect from any of the other tortious statements alleged in the prior counterclaims.  Construing this pleading as triggering a new TCPA deadline would vitiate the deadline's purpose.  *See Montelongo*, 622 S.W.3d at 298.

We find appellants' citations to *TV Azteca*,[8] *Campone v. Kline*,[9] and *Hicks v. Group & Pension Administrators, Inc.*[10] unpersuasive.  In each of those cases, the amended petition contained specific new statements or new claims that were not included in prior pleadings.  *See TV Azteca*, 611 S.W.3d at 31 ("The fifth amended petition also included eight statements that were not previously pleaded in the fourth amended petition, and thus appellants' TCPA motion to dismiss was timely as to those statements."); *Campone*, 2018 WL 3652231, at *6 (explaining that new factual allegations about previously unpleaded instances of alleged defamation rendered TCPA motion timely as to those defamation claims); *Hicks*, 473 S.W.3d at 529-30

---

[8] 611 S.W.3d 24.

[9] No. 03-16-00854-CV, 2018 WL 3652231, at *1 (Tex. App.—Austin Aug. 2, 2018, no pet.) (mem. op.), *abrogated by Montelongo*, 622 S.W.3d at 299 & n.12.

[10] 473 S.W.3d 518 (Tex. App.—Corpus Christi-Edinburg 2015, no pet.), *abrogated by Montelongo*, 622 S.W.3d at 299 & n.12.

14

(holding that TCPA motion to dismiss was timely as to two new claims asserted for first time in amended petition). The same was true in *Kinder Morgan*, where the amended petition included new allegations of taxpayer fraud against Kinder Morgan that had not been previously alleged. *Kinder Morgan*, 622 S.W.3d at 848-51. The circumstances in those cases are distinguishable.

While it is true that a defamatory statement can inflict a new and distinct injury each separate time it is uttered,[11] and that Mid-Main's tortious interference with refinancing claim is based on Friedman's wrongful and defamatory statements, the mere repetition of general continuing misconduct allegations without any new details does not change the claim's essential nature. That type of repeated allegation does not represent a new legal action to which the TCPA sixty-day deadline has not already applied. We therefore conclude that the first section of Mid-Main's Eighth Amended Counterclaim on which appellants rely contains no new essential facts sufficient to trigger a new sixty-day deadline.

Finally, appellants also urge that the "continuing to the present" allegation in the Eighth Amended Counterclaim should trigger a new sixty-day TCPA deadline because the alleged occurrence of new wrongful statements by Friedman might affect their limitations defense. We disagree. Whether a new TCPA deadline is triggered is determined based on the content of the amended legal action, *Montelongo*, 622 S.W.3d at 298-99, not on whether the new allegations may affect any defense. Appellants cite no cases supporting their position.

2. "Additional and ongoing" damages argument

Second, Patriot and Friedman cite allegations in the Eighth Amended Counterclaim that appellants' lien against the property is "delaying and interfering

---

[11] *E.g.*, *TV Azteca*, 611 S.W.3d at 29.

with Mid-Main's efforts to refinance the loans" and that Mid-Main "is suffering financial harm." Though again the quoted text was present in Mid-Main's Seventh Amended Counterclaim, appellants characterize this language as using the present progressive tense to describe "additional and ongoing damage" occurring since the Seventh Amended Counterclaim was filed.

The TCPA provides for the dismissal of "legal actions," which does not include in its definition discrete categories of damages. *See* Tex. Civ. Prac. & Rem. Code § 27.001(6) (defining "legal action" to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief"); *see also Thang Bui v. Dangelas*, No. 01-18-01146-CV, 2019 WL 5151410, at *5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2019, pet. denied) (mem. op.) (explaining that "each fact-based theory of recovery is not a separate legal action"); *Van Der Linden v. Khan*, 535 S.W.3d 179, 201-03 (Tex. App.—Fort Worth 2017, pet. denied) ("[T]he TCPA applies to the dismissal of causes of action, not remedies. . . ."). The TCPA provides a mechanism for dismissing legal actions, such as a claim for tortious interference with prospective business relations, not the remedy associated with that claim, such as a request for an injunction prohibiting business disparagement. *See Van Der Linden*, 535 S.W.3d at 203 ("Because when a legal action is dismissed pursuant to the TCPA, all remedies available under that legal theory disappear with the dismissal of the action itself, a chapter 27 challenge to a request for injunctive relief should be directed at the underlying legal action, not at the requested remedy."). These allegations do not add any new essential facts. *See, e.g.*, *Montelongo*, 622 S.W.3d at 297-98.

3.    Revised false pay application description argument

Finally, Patriot and Friedman cite to Mid-Main's revised description of Patriot's allegedly false pay applications. Mid-Main changed its allegations in this section to add the underlined text and delete the stricken text as shown:

> To make matters worse, Patriot and Stephen Friedman ~~deliberately, and in retaliation for being terminated after walking off the Project,~~ submitted <u>false claims for payments in </u>Patriot Pay Applications 32-35 ~~without doing the work or supplying the materials to finish the Project~~.

According to Mid-Main, by deleting the allegation that Patriot's submission of invalid payment claims occurred "after walking off the Project," the Eighth Amended Counterclaim "expands to seek damages for invoices submitted before Patriot left the Project." And by deleting "in retaliation for being terminated," Mid-Main purportedly altered the "alleged motivation behind the scheme it alleges," which appellants say is essential to all of Mid-Main's claims containing an intent element.

Again we disagree. To be sure, this is the only section of the Eighth Amended Counterclaim on which appellants rely that contains an actual language modification from the prior pleading. But this change did not add new essential facts of which appellants previously lacked fair notice. According to appellants, Mid-Main's Seventh Amended Counterclaim complained only of pay applications Patriot submitted after termination; whereas, the Eighth Amended Counterclaim expanded Mid-Main's complaint to include pay applications Patriot submitted before termination as well. Mid-Main's allegation in both the Seventh and Eighth Amended Counterclaims, however, is directed specifically to the *same* pay applications—numbers 32 through 35—regardless when they were submitted.[12] Appellants have been on notice that Mid-Main was complaining about pay

_____

[12] Mid-Main says it revised the temporal language because not all of pay applications 32 through 35 were submitted after Patriot abandoned the project.

17

applications 32-35 since at least March 2019, and perhaps earlier, when Mid-Main filed its Fourth Amended Counterclaim.[13] The only changes from the Seventh to the Eighth Amended Counterclaims involved not *which* pay applications were the subject of complaint, but when they were submitted and a general description of why the pay applications specifically mentioned were problematic. In the earlier pleading, Mid-Main said Patriot submitted those pay applications without doing the work; in the subsequent pleading, Mid-Main said the pay applications contained "false claims." This modification, however, adds no new essential factual allegations. *See Borderline Mgmt., LLC*, 2020 WL 1061485, at *8 (when factual allegations in amended pleading essentially remain the same as those in earlier pleading, the amended pleading does not trigger a new sixty-day motion deadline). Moreover, removing the allegation that appellants "deliberately" submitted false or unsupported pay applications deletes, rather than adds, an allegation of improper scienter.

Because Mid-Main's Eighth Amended Counterclaim did not add any new claims or any new essential factual allegations, this pleading did not assert a new legal action triggering a new sixty-day TCPA filing deadline. We conclude that appellants' TCPA motion to dismiss, filed on October 14, 2020, was untimely. *See* Tex. Civ. Prac. & Rem. Code § 27.003(b). Accordingly, the trial court did not err in denying the motion for this reason.

We overrule appellants' first three issues.

---

[13] Mid-Main's First, Second, and Third Amended Counterclaims do not appear in our record.

## Attorneys' Fees and Costs

In their fourth issue, appellants argue that the trial court erred in ordering that Mid-Main recover its attorneys' fees and costs under section 27.009(b). Appellants challenge the trial court's findings that appellants' motion was frivolous and solely intended to delay this case. *See* Tex. Civ. Prac. & Rem. Code § 27.009(b). Although the court's order does not determine the amount of fees and costs recoverable by Mid-Main, it made the threshold recoverability findings under section 27.009(b) necessary to support an award, and we may consider appellants' challenges to those findings at this time. *See Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *16 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (explaining that appeal of attorney's fee issue was not premature even though trial court had not yet determined amount of fee award because the trial court ruled that the fees were recoverable).[14]

"If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem. Code § 27.009(b). We review the trial court's decision to award attorney's fees under this section for an abuse of discretion. *Navidea Biopharm., Inc. v. Capital Royalty Partners II, L.P.*, No. 14-18-00740-CV, 2020 WL 5087826, at *6 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.) (citing *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied)). "A trial court abuses its discretion when its decision 'is arbitrary, unreasonable, or without reference to guiding principles.'" *Sullivan*, 551 S.W.3d at 857 (quoting *Goode v. Shoukfeh*, 943

---

[14] After appellants filed their notice of appeal, the trial court signed a separate order awarding a sum certain to Mid-Main for attorneys' fees and costs. We vacated that order because the trial court signed it during the automatic stay of all trial court proceedings. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12), (b).

S.W.2d 441, 446 (Tex. 1997)); *see also Navidea Biopharm.*, 2020 WL 5087826, at
*6.

We first consider the trial court's finding that the motion was frivolous. The term "frivolous" is not defined in the TCPA. But "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has 'no basis in law or fact' and 'lacks a legal basis or legal merit.'" *Sullivan*, 551 S.W.3d at 857 (quoting *Frivolous*, Webster's Third New Int'l Dictionary 913 (2002), Black's Law Dictionary 739 (9th ed. 2009)).

Appellants assert that their TCPA motion was not frivolous for three reasons: (1) whether or not the motion should have been granted, it had some basis in law and fact; (2) the motion "navigated" unsettled law because the new version of the TCPA was enacted only thirteen months before appellants filed their TCPA motion; and (3) the trial court's finding that the motion "requested dismissal of a cause of action that the plain text of the statute clearly exempts from dismissal"—i.e., Mid-Main's common law fraud claim—is erroneous because the motion targeted Mid-Main's statutory fraud claims, which are not covered by the exemption.

Presuming that the motion had at least some basis in law on the merits, the trial court nonetheless would be within its sphere of discretionary authority in denying it and finding it frivolous if it was untimely and if appellants asserted no non-frivolous argument in support of its timeliness. Appellants argue that their motion was timely because the allegations discussed above were new facts in support of previously asserted claims. The trial court could have determined they were not, and we agree for the reasons explained. The court further could have concluded that appellants' attempt to justify the motion's timeliness was not supported in law or fact. Although the supreme court had not considered the issue before appellants filed their TCPA motion, all courts that addressed the issue at that time held that an

20

amended pleading against the same parties that did not assert any new claims or new essential facts did not reset the TCPA's sixty-day filing deadline. *See Montelongo*, 622 S.W.3d at 296-97 (citing cases) ("The courts have consistently agreed that an amended or supplemental pleading does not assert a new legal action if it asserts the same legal claims or causes of action by and against the same parties based on the same essential factual allegations."). To be sure, authority also existed that new claims or new facts could trigger a new sixty-day deadline, and appellants cited *Petrobras* for that proposition. *See Petrobras*, 633 S.W.3d at 639. The cited allegations in Mid-Main's Eighth Amended Counterclaim, however, do not fall into that category, as the trial court reasonably could have determined. There was no authority holding that the repetition of identical general ongoing wrongful conduct allegations in successive legal actions was sufficient to constitute "new facts" triggering a new TCPA deadline. And this court in *Petrobras* suggested otherwise. *Id.* at 639-40. The state of Texas law did not present a lack of clarity supportive of appellants' timeliness argument as colorable. There existed overwhelming support for the trial court's determination that the motion was not timely, including decisions from this court and our sister court in Houston.[15]

That all courts which have considered timeliness arguments under comparable circumstances have rejected them is evidence that appellants' TCPA motion was frivolous. *See Reynolds v. Sanchez Oil & Gas Corp.*, 617 S.W.3d 30, 52 (Tex. App.—Houston [1st Dist.] 2020), *rev'd on other grounds*, 635 S.W.3d 636 (Tex. 2021) (per curiam). Accordingly, we cannot conclude that the trial court abused its discretion when it found that appellants' motion to dismiss was frivolous. *See Ruff*, 2022 WL 420353, at *8-9 ("As discussed above, Mike's motion was not filed timely, that is, within sixty days of service of the legal action but was filed almost three

---

[15] *See supra* note 5.

21

years later. The trial court could conclude that Mike's attempt to explain his tardy filing as being based on new allegations in the seventh amended pleading was in bad faith and had no legal basis."); *see also Mosiac Baybrook One LP v. Cessor*, Nos. 14-19-00514-CV, 14-19-00695-CV, 2021 WL 2656613, at \*11-12 (Tex. App.—Houston [14th Dist.] June 29, 2021, pet. denied) (mem. op.) (based on "unique nature and procedural history" of case and "deferential standard of review," affirming trial court's finding that TCPA motion to dismiss was frivolous).

Because we hold that the trial court did not abuse its discretion in determining the motion was frivolous, we need not consider whether the motion was also brought solely to delay proceedings. *See* Tex. Civ. Prac. & Rem. Code § 27.009(b); Tex. R. App. P. 47.1; *see also Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 244 (Tex. App.—Eastland 2019, pet. dism'd).

We overrule appellants' fourth issue.

## Conclusion

Having overruled appellants' issues, we affirm the trial court's order denying their TCPA motion to dismiss, as well as the trial court's finding that appellants' TCPA motion to dismiss was frivolous.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.

22